[No. S100360. Jan. 22, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER FRANCISCO POSEY, Defendant and Appellant.

COUNSEL

Randi Covin, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GEORGE, C. J.—We granted review in this case to resolve an issue concerning venue that we noted but did not resolve in *People v. Simon* (2001) 25 Cal.4th 1082, 1110, footnote 18 [108 Cal.Rptr.2d 385, 25 P.3d 598], relating to the soundness and continuing vitality of the rule, set forth in a line of California judicial decisions, that declares the issue whether a criminal action has been brought in a place appropriate for trial to be a question of fact to be decided by the jury at the conclusion of trial rather than a question of law to be decided by the court prior to trial.

Penal Code section 777[1] states the general rule for venue in criminal actions: "[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." In other words, under section 777 venue lies in the superior court of the county in which the crime was committed, and a defendant may be tried there. (See generally 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Jurisdiction and Venue, § 50, pp. 139–141; see also *id.*, §§ 13–18, pp. 101–108 [discussing the effect of trial court unification]; *id.* (2003 supp.) §§ 13, 14, 16, 18, pp. 18–19 [same].)

Section 781—the provision involved in this case—states one of the many exceptions to the general rule for venue: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory." Thus, under section 781, when a crime is committed partly in one county and partly in another county, or when the acts or effects constituting the crime or requisite to its commission occur in more than one county, venue is in the superior court in each of the counties in question, and a defendant may be tried in any

---

[1] Subsequent unspecified section references are to the Penal Code.

of them. (See generally 4 Witkin & Epstein, Cal. Criminal Law, *supra*, Jurisdiction and Venue, §§ 51–53, pp. 141–145; *id.* (2003 supp.) §§ 52–53, pp. 23–24.)

In *Simon*, we concluded that "pursuant to the general legal doctrine that a party may forfeit a right by failing to assert it in a timely fashion, a defendant . . . forfeits a claim of improper venue when he or she fails specifically to raise such an objection prior to the commencement of trial." (*People v. Simon, supra*, 25 Cal.4th at p. 1086.) But we also concluded that "in light of the confusion in the prior California case law, our holding with regard to the proper procedure for raising an objection to venue shall apply only prospectively," because our opinion announced a new rule as set out above. (*Id.* at p. 1087.)

In *Simon*, we also noted, but did not resolve, the issue of the soundness and continuing vitality of the rule that venue presents a question of fact to be decided by the jury. Because in that case the defendant "failed at trial to provide an appropriate jury instruction or authority supporting the giving of such an instruction, we ha[d] no occasion to determine whether, in the absence of legislative action, it would be appropriate for this court to revisit the lengthy and uniform line of decisions" supporting that rule. (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18.)

In this case, by contrast, defendant timely raised the question of venue prior to trial and again at trial, and we conclude that it is appropriate for us to resolve the issue left open in *Simon*.

As we shall explain, we conclude that the rule that venue is a question of fact for the jury is unsound for a number of fundamental reasons. First, the rule impedes the purposes underlying the venue provisions, especially their "principal purpose . . . from a defendant's perspective" of "protect[ing] a defendant from being required to stand trial in a distant and unduly burdensome locale" (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18), by putting off any finding on venue until *after* "the defendant [has been] required to undergo the rigors and hardship of standing trial in an assertedly improper locale," and *after* "the state [has] incur[red] the time and expense of conducting a trial" there (*id.* at p. 1087). Second, the rule is "inconsistent with contemporary treatment of other, analogous . . . issues," inasmuch as venue is a procedural question involving the appropriateness of a place for a defendant's trial on a criminal charge, and not a substantive question relating to the defendant's guilt or innocence of the crime charged. (*Id.* at p. 1110, fn. 18.) Third, the rule threatens the untoward consequence of an "unwarranted acquittal" when the jury returns a verdict of not guilty predicated solely on lack of proper venue. (*Ibid.*)

In addition to concluding that the rule that venue is a question of fact for the jury is unsound, we also conclude that this rule properly may be reconsidered and modified by this court without awaiting action by the Legislature, because the rule was established by judicial decision and has not been incorporated in any statute. Accordingly, we hold, for the reasons stated above, that venue is a question of law for the court, to be decided prior to trial.

Finally, we conclude that because adherence to the prior rule that venue is a question of fact for the jury has been widespread and long-standing, and because the holding that venue is a question of law for the court announces a new rule, we should not apply that new rule to the present case or any other case not yet final on appeal.

The Court of Appeal in this matter, although noting the issue we left open in *Simon* respecting venue, rejected on other grounds all of defendant's claims of error implicating venue and determined that, contrary to defendant's argument, under section 781 Marin County—the county in which the case was tried—was an appropriate place for trial of the crimes with which defendant had been charged. As we shall explain, we conclude that the Court of Appeal correctly rejected all of defendant's claims related to venue, and therefore affirm the judgment of the Court of Appeal.

# I

The District Attorney of Marin County charged defendant Christopher Francisco Posey in the Marin Superior Court with two counts of sale of cocaine base in violation of Health and Safety Code section 11352, subdivision (a), and alleged, for purposes of establishing venue under section 781, that defendant committed the crimes, or engaged in the requisite acts or caused the requisite effects, in two counties, implicitly Marin and San Francisco. Defendant pleaded not guilty to the sale-of-cocaine-base charges and denied the venue allegation.

Both prior to and during trial, defendant repeatedly but unsuccessfully objected to venue, claiming that Marin County was not an appropriate place for trial. At the trial itself, which was conducted before a jury, defendant presented his objection to venue as essentially his sole defense. Viewed in the light most favorable to the ensuing judgment, the evidence introduced at trial disclosed the following facts.

Detective Rudy Yamanoha of the Marin County Sheriff's Department received information that a woman known as " Nini," who apparently was a resident of San Francisco County, was selling cocaine in the area of Marin or

was selling that substance to Marin residents. (Nini later was identified as Johnneka Hall, who originally had been defendant's codefendant, but had fled prior to trial.) Yamanoha, while in Marin, placed a telephone call to Nini, who was in San Francisco, and left on a paging system a telephone number that apparently had a 415 area code (which encompasses both Marin and San Francisco). Nini called back Yamanoha and soon agreed to sell him an ounce of cocaine base for $575. Although he in fact was in Marin, Yamanoha told Nini that he was in Santa Rosa, in Sonoma County, and asked her to meet him halfway at Vista Point on the Marin side of the Golden Gate Bridge, but she did not agree. Later that day, Yamanoha paged Nini again to make arrangements for delivery, this time apparently leaving a second telephone number with a 415 area code. Nini called back Yamanoha and had him speak to defendant, who persuaded Yamanoha to buy two ounces of cocaine base for $1,150, and then agreed to delivery at Vista Point in Marin. A minute or so later, however, defendant called Yamanoha at the second 415 area code telephone number, and changed the point of delivery from Vista Point in Marin to a location in San Francisco not far from the Golden Gate Bridge.[2] That evening, Yamanoha went to the location in question and, after some delay, bought a little less than two ounces of cocaine base from defendant for the full price of $1,150, with defendant promising to make up for the shortage on the next purchase. The transaction was surreptitiously videotaped by law enforcement officers.

Some days later, Detective Yamanoha, in Marin County, again paged Nini, who was in San Francisco County, and apparently left a telephone number with a 707 area code (which encompasses Sonoma County, including Santa Rosa) directed to a cellular telephone. Nini called back Yamanoha and had him speak to defendant. Yamanoha asked to buy two more ounces of cocaine base, and defendant agreed to sell that quantity for $1,150. Although he in fact was in Marin, Yamanoha told defendant that he was in Santa Rosa, and asked defendant to meet him halfway in Marin; defendant refused, and proposed the same location in San Francisco as previously; Yamanoha ended the conversation before resolving the matter, stating that he had an incoming call, and defendant said that he would call back. A minute or so later, defendant called Yamanoha, apparently at the 707 area code telephone number, and Yamanoha agreed to meet him at the previously identified San Francisco location. That evening, Yamanoha went to the location in question and purchased two ounces of cocaine base from defendant for $1,150. This transaction too was surreptitiously videotaped by law enforcement officers.

---

[2] The location in San Francisco County was more than 500 yards distant from the boundary with Marin County, and as such was beyond the reach of section 782, which provides that "[w]hen a public offense is committed on the boundary of two or more jurisdictional territories, or within 500 yards thereof, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

A few days later, Detective Yamanoha attempted to buy more cocaine base from defendant, but gave up when defendant refused to make delivery other than in San Francisco County. Within a week or two, defendant was arrested in San Francisco.

In its charge, the trial court instructed the jury on the crime of sale of cocaine base and also on venue, and directed it to determine the question of guilt or innocence prior to venue. After deliberations, the jury returned verdicts finding defendant guilty of two counts of sale of cocaine base. The jury, however, was unable to agree on venue. Thereupon, the trial court declared a mistrial on that issue alone, denying a motion by defendant for mistrial on the entire case.

After rejecting a suggestion by the People that it resolve the question of venue itself, the trial court empanelled a second jury and conducted a second trial solely on the issue of venue. Evidence similar to that presented at the first trial was introduced before the second jury. After the second jury was instructed on venue by the trial court, and after that jury presented questions to, and received answers from, the trial court in the course of deliberations, the jury made a finding that "Venue is in Marin County." The trial court rendered a judgment of conviction, sentencing defendant to a term of imprisonment.

On appeal, the Court of Appeal affirmed the judgment (after modifying it in part on a point not pertinent here). Noting that we had left open the issue of the soundness and continuing vitality of the rule that venue is a question of fact for the jury, the Court of Appeal rejected each of defendant's contentions relating to venue. First, the Court of Appeal concluded that the trial court had not erred by receiving from the first jury the verdicts finding defendant guilty of two counts of sale of cocaine base that were purportedly "incomplete" because that jury was unable to agree on venue, and that the trial court had not acted in excess of its jurisdiction by thereafter declaring a mistrial on venue alone, empanelling the second jury, receiving *that* jury's finding that venue was in Marin County, and rendering the ensuing judgment. Second, the Court of Appeal rejected a claim that the trial court's instructions to the second jury on venue were erroneous. Third, the Court of Appeal concluded that the evidence was sufficient to support the second jury's finding on venue. Fourth and finally, the Court of Appeal held that the trial court had not violated defendant's right, under the Sixth Amendment to the United States Constitution or section 16 of article I of the California Constitution, to trial by jurors of the vicinage by drawing the first jury (which returned the guilty verdicts) from Marin County.

We granted defendant's petition for review. We conclude that we should affirm the judgment rendered by the Court of Appeal.

## II

The primary issue before us on review concerns the soundness and continuing vitality of the rule, set forth in a line of California judicial decisions, that declares venue to be a question of fact to be decided by the jury at the conclusion of trial rather than a question of law to be decided by the court prior to trial.

In *People v. Simon, supra,* 25 Cal.4th 1082, we concluded that "pursuant to the general legal doctrine that a party may forfeit a right by failing to assert it in a timely fashion, a defendant . . . forfeits a claim of improper venue when he or she fails specifically to raise such an objection prior to the commencement of trial." (*Id.* at p. 1086.) We noted "the fundamental purposes underlying criminal venue provisions"—which, most broadly stated, aim at ensuring that a defendant's trial on a criminal charge is conducted in an appropriate place, taking into account convenience both to the People and to the defendant, fairness to the defendant, and participation on the part of the community affected. With those purposes in mind, we concluded that "the interests of both the accused and the state support a requirement that any objection to the proposed location of a . . . trial must be specifically raised prior to the commencement of trial, *before* the defendant is required to undergo the rigors and hardship of standing trial in an assertedly improper locale, and *before* the state incurs the time and expense of conducting a trial in that county." (*Id.* at pp. 1086–1087.) We further concluded that "in light of the confusion in the prior California case law, our holding with regard to the proper procedure for raising an objection to venue shall apply only prospectively . . . ." (*Id.* at p. 1087.)

Near the end of our opinion in *Simon,* we referred to the issue that is before us in this case and that we shall discuss at length below. We stated in *Simon:* Notwithstanding "language" in "numerous California decisions . . . , the characterization of venue as presenting the type of factual question that properly is to be determined by a jury, rather than the type of procedural legal issue that is determined by the court, appears inconsistent with contemporary treatment of other, analogous procedural issues that do not relate to the guilt or innocence of the accused (such as whether the prosecution has complied with . . . speedy trial requirements)—issues that uniformly are treated as legal questions to be decided by the court rather than a jury. [Citations.] Indeed, treating venue as presenting a question to be resolved by a jury appears particularly problematic when one considers that the principal purpose underlying the venue statutes from a defendant's perspective—to protect a defendant from being required to stand trial in a distant and unduly burdensome locale—can be meaningfully effectuated only if a defendant's venue challenge is considered and resolved prior to trial, well before a jury is empanelled or any issue is submitted to it. In addition, unless the jury is instructed

to return a separate [finding] on the issue of venue before returning a . . . verdict, a finding that the proceeding has been brought in an improper venue can result in an unwarranted acquittal, rather than in a new trial in an authorized venue." (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18.)

In concluding the discussion of this point in *Simon*, we declared that "[b]ecause in this case defendant failed at trial to provide an appropriate jury instruction or authority supporting the giving of such an instruction, we have no occasion to determine whether, in the absence of legislative action, it would be appropriate for this court to revisit the lengthy and uniform line of decisions holding that the issue of venue presents a question of fact to be determined by a jury." (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18.)[3] In this regard, we acknowledged in *Simon* (see *People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18) that the Court of Appeal's opinion in *People v. Megladdery* (1940) 40 Cal.App.2d 748, 766 [106 P.2d 84],[4] had opined that "[i]n view of the long line of decisions [treating venue as a question of fact for the jury], it is our belief that if the rule is to be changed it should be done by the legislature."

Turning now to the issue before us, we begin with the same acknowledgment that we made in *Simon*—that in California there is a lengthy and uniform line of decisions holding or stating, expressly or impliedly, that venue is a question of fact for the jury.[5] We also acknowledge that decisions "[i]n the federal system and the vast majority of the states" also generally treat venue as a question of fact for the jury. (4 LaFave et al., Criminal Procedure (2d ed. 1999) § 16.1(g), p. 499, fn. omitted.)

In analyzing the soundness and continuing vitality of the rule that venue is a question of fact for the jury, we believe it is helpful to consider at the outset two points implicated in the issue.

---

[3] For similar reasons, we found no reason to resolve this issue in our recent decision in *People v. Crew* (2003) 31 Cal.4th 822, 836 [3 Cal.Rptr.3d 733, 74 P.3d 820].

[4] *Megladdery* was disapproved on another point in *People v. Simon, supra*, 25 Cal.4th at page 1108.

[5] See, e.g., *People v. McGregar* (1891) 88 Cal. 140, 144 [26 P. 97]; *People v. More* (1886) 68 Cal. 500, 504 [9 P. 461], overruled on another point by *People v. Simon, supra*, 25 Cal.4th at page 1106; *People v. Alviso* (1880) 55 Cal. 230, 233; *People v. Sering* (1991) 232 Cal.App.3d 677, 689 [283 Cal.Rptr. 507]; *People v. Jackson* (1983) 150 Cal.App.3dSupp. 1, 16 [198 Cal.Rptr. 135]; *People v. Witt* (1975) 53 Cal.App.3d 154, 167 [125 Cal.Rptr. 653]; *People v. Jones* (1964) 228 Cal.App.2d 74, 86–87 [39 Cal.Rptr. 302]; *People v. Garcia* (1952) 122 Cal.App.2dSupp. 962, 965–966; *People v. Megladdery, supra*, 40 Cal.App.2d at page 764; *People v. Smith* (1938) 26 Cal.App.2d 189, 190–191 [79 P.2d 155]; *People v. Brock* (1937) 21 Cal.App.2d 601, 607 [70 P.2d 210]; *People v. Morales* (1928) 91 Cal.App. 731, 734 [267 P. 570]; *In re Application of O'Connor* (1927) 80 Cal.App. 647, 653 [252 P. 730]; *People v. Coker* (1926) 78 Cal.App. 151, 159 [248 P. 542].

■ The first point involves the labeling of venue as either a question of law for the court or a question of fact for the jury. Fundamentally, the distinction between questions of fact for the jury and questions of law for the court (see § 1126; Evid. Code, §§ 310, 312) turns on whether the issue presented relates to the substantive matter of guilt or innocence to be determined at trial or, instead, concerns a procedural matter that does not itself determine guilt or innocence but either precedes the trial (such as whether to change venue), affects the conduct of the trial (such as whether to admit certain evidence), or follows the trial (such as whether to order a new trial). (See *People v. Simon, supra,* 25 Cal.4th at p. 1110, fn. 18.) If an issue implicates guilt or innocence as a substantive matter, it generally lies within the province of the jury, but an issue involving a procedural matter generally lies within the province of the court.

There are numerous procedural matters decided prior to trial, during trial, and after trial, that accordingly lie within the court's province as questions of law, but that necessarily require the court to consider and determine underlying questions of fact—frequently even questions of fact relating in some way to the charged offense.

For example, prior to trial the court, in deciding whether a defendant charged with a capital crime must be denied bail (§ 1270.5), makes findings of fact, overlapping the facts of the crime itself, as to whether "proof of his or her guilt is evident" (*ibid.*). In deciding whether to dismiss a criminal action for lack of probable cause to believe the defendant has committed the crime charged, the court similarly determines whether there exists "such a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the [defendant's] guilt" (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609]). In addition, the court decides whether to dismiss an action for discriminatory prosecution (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 293, fn. 4 [124 Cal.Rptr. 204, 540 P.2d 44]), making a factual determination as to whether the prosecution engaged in intentional and purposeful invidious discrimination (see *id.* at pp. 293–301); the court decides whether to dismiss an action because the prosecution has destroyed evidence (*People v. Zapien* (1993) 4 Cal.4th 929, 966–968 [17 Cal.Rptr.2d 122, 846 P.2d 704]), determining whether the destruction of the evidence prejudiced the defendant (*id.* at p. 967); and the court decides in a case of welfare fraud whether the prosecution failed first to seek restitution and whether the charges must be dismissed as a result (*People v. McGee* (1977) 19 Cal.3d 948, 967–968 [140 Cal.Rptr. 657, 568 P.2d 382]). The court also decides whether to dismiss an action for violation of the defendant's right to a speedy trial (§ 1382), making the factual determination whether there was good cause for any delay (see, e.g., *Owens v. Superior Court* (1980) 28 Cal.3d 238, 250 [168 Cal.Rptr. 466, 617 P.2d 1098]). Likewise, the court decides, under the two-dismissal rule

that protects the defendant's speedy-trial right (see *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 738–739 [124 Cal.Rptr.2d 591]), whether to dismiss an action upon the prosecution's bringing of charges a third time following two dismissals (§ 1387), finding under certain circumstances whether the prosecution acted in bad faith (§ 1387.1, subd. (a); see *Miller v. Superior Court, supra*, 101 Cal.App.4th at pp. 743–745). The court also decides whether to change venue (§ 1033), considering facts overlapping those of the offense, such as "the gravity and nature of the crime" and perhaps "the status of the victim and the accused" (*People v. Navarette* (2003) 30 Cal.4th 458, 484 [133 Cal.Rptr.2d 89, 66 P.3d 1182]), and other facts that do not relate to the crime, such as "the extent and nature of the publicity" and "the size of the community" (*ibid.*).

During trial, the court decides whether to admit all types of evidence (see Evid. Code, §§ 310, subd. (a), 400-405), making findings of fact as to all preliminary matters (see *id.*, §§ 400-405), some of which, again, overlap the facts of the crime charged, such as the existence of a conspiracy to commit the crime in question (see, e.g., *People v. Herrera* (2000) 83 Cal.App.4th 46, 54-66 [98 Cal.Rptr.2d 911]), and others that involve factual determinations unrelated to the crime, such as the qualifications of an expert called to the witness stand (see, e.g., *People v. Ashmus* (1991) 54 Cal.3d 932, 970–972 [2 Cal.Rptr.2d 112, 820 P.2d 214]).

After the trial has concluded, the court decides whether to order a new trial (§ 1179 et seq.), making findings of fact that overlap those of the crime of which the defendant was found guilty (as when relief is sought on the ground of insufficiency of the evidence [§ 1181, subd. 6] or newly discovered evidence [§ 1181, subd. 8]), as well as factual determinations distinct from the crime (as when relief is sought on the ground of jury misconduct [§ 1181, subd. 3]), and yet others that may involve factual determinations in part related and in part unrelated to the crime (as when relief is sought on the ground of ineffective assistance of counsel, [see, e.g., *People v. Fosselman* (1983) 33 Cal.3d 572, 582–583 [189 Cal.Rptr. 855, 659 P.2d 1144]).

▪ Thus, although questions of fact relating to the substantive issue of guilt or innocence are within the province of the jury, questions of law concerning procedural issues that do not themselves determine guilt or innocence—including any underlying questions of fact—are within the province of the court. (See *People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18.)

▪ The second point implicated, in analyzing the soundness and continued vitality of the rule that venue is a question of fact for the jury, involves the notion of venue itself. In California in criminal actions, venue simply denotes the place or places appropriate for a defendant's trial. (E.g., *Price v. Superior*

*Court* (2001) 25 Cal.4th 1046, 1054 [108 Cal.Rptr.2d 409, 25 P.3d 618]; *People v. Guzman* (1988) 45 Cal.3d 915, 934 [248 Cal.Rptr. 467, 755 P.2d 917], overruled on another point by *Price v. Superior Court, supra,* 25 Cal.4th at p. 1069, fn. 13.) Venue does not implicate the trial court's fundamental jurisdiction in the sense of *personal* jurisdiction, which is the authority of the court to proceed against a particular defendant in a criminal action (see, e.g., *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [122 Cal.Rptr.2d 326, 49 P.3d 1067]). (Compare 4 Witkin & Epstein, Cal. Criminal Law, *supra,* Jurisdiction and Venue, § 3, pp. 88–89 [personal jurisdiction] with *id.,* § 45, p. 135 [venue].) Neither does venue implicate the trial court's fundamental jurisdiction in the sense of *subject matter* jurisdiction, which is the authority of the court to consider and decide the criminal action itself (see, e.g., *People v. Mower, supra,* 28 Cal.4th at p. 474, fn. 6). Indeed, in *Simon,* while conceding the existence of some confusion in earlier decisions, arising perhaps from the general presence of the terms "jurisdiction" and "jurisdictional territory" in venue provisions such as sections 777 and 781, we stated that "it is now established beyond question that the issue of venue does *not* involve a matter of subject matter jurisdiction." (*People v. Simon, supra,* 25 Cal.4th at p. 1096.)

■ Lastly, venue is not a part or aspect of substantive criminal law. (See *People v. Simon, supra,* 25 Cal.4th at p. 1110, fn. 18.) Accordingly, venue does not constitute an element of any crime. (*People v. Sering, supra,* 232 Cal.App.3d 677, 688; see *People v. Remington* (1990) 217 Cal.App.3d 423, 430 [266 Cal.Rptr. 183].) Indeed, in *Simon* we characterized venue as merely a "procedural issue[] that do[es] not relate to . . . guilt or innocence" at all. (*People v. Simon, supra,* 25 Cal.4th at p. 1110, fn. 18.) As recognized in a leading treatise, venue simply is a "procedural prerequisite[] for prosecution," much like a "valid preliminary hearing bindover" or a "grand jury charge." (4 LaFave et al., Criminal Procedure, *supra,* § 16.1(g), pp. 498–499.) In sum, venue is a procedural issue involving the appropriateness of a place for the conduct of a defendant's trial on a criminal charge, and not a substantive issue relating to the defendant's guilt or innocence of the crime charged.[6]

---

[6] We note in passing that in *Sullivan v. Louisiana* (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078], followed by *United States v. Gaudin* (1995) 515 U.S. 506 [132 L.Ed.2d 444, 115 S.Ct. 2310], the United States Supreme Court held that the due process clause of the Fourteenth Amendment to the United States Constitution demands that the state prove every element of a crime beyond a reasonable doubt to the satisfaction of the jury. In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], the court similarly held that the due process clause of the Fourteenth Amendment demands that the state prove beyond a reasonable doubt to the jury every fact, other than a prior conviction, that increases the punishment for a crime beyond the maximum otherwise prescribed. Plainly, venue is not an element of any crime, nor do the facts underlying venue increase the punishment for any crime; venue and its underlying facts merely establish the appropriateness of a place for trial of the crime charged.

 Further, in California, "venue . . . is governed by statute" and not by the California Constitution. (*People v. Simon, supra,* 25 Cal.4th at p. 1099, fn. 10; accord, *Price v. Superior Court, supra,* 25 Cal.4th at p. 1056.) This signifies that "venue . . . implicates legislative policy, not constitutional imperative." (*Price v. Superior Court, supra,* 25 Cal.4th at p. 1056.) Thus, the Legislature may define venue pursuant to statutory provisions, subject only to such constraints as may be imposed by the United States and California Constitutions, particularly with regard to vicinage and due process of law. (*Price v. Superior Court, supra,* 25 Cal.4th at p. 1056.)

The general venue provision, as indicated, is section 777, which declares that when a crime is committed in a particular county, venue lies in that county. Section 781 is but one of the many venue provisions that establish venue in additional counties, depending upon the circumstances of the specific case. As noted, section 781 states that when a crime is committed partly in one county and partly in another county, or when the acts or effects constituting the crime or requisite to its commission occur in more than one county, venue lies in each of the counties in question.[7]

---

In this regard, we add that we have been presented with no argument, and have discovered no basis, upon which to conclude that the rule that venue is a question of fact for the jury is compelled by any California statute or by any provision of the United States or California Constitutions, including the guaranties of trial by jury (U.S. Const., Amend. VI; Cal. Const., art. I, § 16) or due process of law (U.S. Const., Amend. XIV; Cal. Const., art. I, §§ 7, 15).

[7] Venue provisions in addition to sections 777 and 781 include those listed in *People v. Simon, supra,* 25 Cal.4th at page 1094, footnote 6, namely, section 777a (venue for parental failure to provide care for a minor child lies in the county in which the child is cared for or in the county in which the parent is apprehended); section 777b (venue for perjury committed outside of California lies in the county in California "in which occurs the act, transaction, matter, action, or proceeding, in relation to which the [perjured statement] was given or made"); section 778 (venue for a crime commenced outside of California but consummated within California by a defendant outside of California lies in the county of consummation); section 782 (venue for a crime committed on, or within 500 yards of, the boundary of two or more counties lies in each of the counties in question); section 783.5 (venue for a crime committed in a park situated in more than one county lies in any county in which any part of the park is situated); section 784 (venue for kidnapping, false imprisonment, or seizure for slavery lies in the county in which the crime is committed, the county out of which the victim is taken, or any county in which the defendant does any "act . . . in instigating, procuring, promoting, or aiding . . . or . . . abetting" with respect to the crime); section 784.5 (venue for child abduction lies in the county in which the child resides or where the agency deprived of custody is located, the county in which the child was taken, detained, or concealed, or the county in which the child is found); section 784.7 (venue for multiple specified sexual, domestic, harm-to-child, and stalking crimes generally lies in any county in which any of the crimes is committed); section 785 (venue for incest lies in the county in which the crime is committed or in the county in which the defendant is apprehended; venue for bigamy lies in the county in which the marriage took place, any county in which cohabitation occurs, or the county in which the defendant is apprehended); section 788 (venue for treason, when the overt act is committed outside California, lies in any county); section 789 (venue for theft or receipt

In *Simon*, we explained that "venue provisions applicable to criminal proceedings serve a variety of purposes. First, '[v]enue in the place where the crime was committed promotes the convenience of both parties in obtaining evidence and securing the presence of witnesses.' [Citation.] Second, from the perspective of a defendant, statutory enactments that provide for trial in a county that bears a reasonable relationship to an alleged criminal offense also operate as a restriction on the discretion of the prosecution to file charges in any locale within the state that it chooses, an option that, if available, would provide the prosecution with the considerable power to choose a setting that, for whatever reason, the prosecution views as favorable to its position or hostile or burdensome to the defendant's. . . . 'The principal justification today for the venue requirement of trial in the vicinity of the crime is to "safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." ' [Citations.] Finally, venue provisions also serve to protect the interests of the community in which a crime or related activity occurs, 'vindicat[ing] the community's right to sit in judgment on crimes committed within its territory.' " (*People v. Simon, supra,* 25 Cal.4th at p. 1095.)

It follows from the foregoing that venue should be considered a question of law for determination by the court prior to trial rather than a question of fact for the jury at the conclusion of trial. We find persuasive the reasons noted in *Simon.* First, determination of venue by the court prior to trial rather than by the jury at the conclusion of trial furthers the purposes underlying venue provisions, especially their "principal purpose . . . from a defendant's perspective," namely "to protect a defendant from being required to stand trial in a distant and unduly burdensome locale." (*People v. Simon, supra,* 25 Cal.4th at p. 1110, fn. 18.) Indeed, such purposes "can be meaningfully effectuated only" by entrusting venue to the court prior to trial rather than to the jury at the conclusion of the trial. (*Ibid.*) Second, the determination of venue by the court prior to trial rather than by the jury at the conclusion of trial is consistent with "contemporary treatment of other, analogous . . . issues" of procedure, which are distinct from issues of substance. (*Ibid.*) As we have noted, venue is a procedural question involving the appropriateness of a place

---

of stolen property, when the property in question has been stolen or received in another state and then brought into California, lies in any county into or through which the property is brought); section 790 (venue for murder or manslaughter lies in the county in which the fatal injury was inflicted, the county in which the victim dies, or the county in which the victim's body is found); section 795 (venue for crimes relating to prize fighting lies in any county in which any act is done toward commission of the crime, any county that the defendant passes into, out of, or through, in order to commit the crime, or the county in which the defendant is arrested); and Business and Professions Code section 16754 (venue for unlawful restraint of trade lies in any county in which the crime is committed in whole or in part, any county in which any of the defendants resides, or any county in which any corporate defendant does business).

for a defendant's trial on a criminal charge, and not a substantive question relating to the defendant's guilt or innocence of the crime charged. Third, determination of venue by the court prior to trial rather than by the jury at the conclusion of trial avoids the untoward consequence of an "unwarranted acquittal" when the jury returns a verdict of not guilty predicated solely on lack of proper venue. (*Ibid.*)

Without stating a rationale, the decisions that gave rise to the rule that venue is a question of fact for the jury appear to have premised their treatment of venue on the assumption that, just as the People must prove the facts underlying the charged offense to the satisfaction of the jury, they similarly should have to prove the facts underlying venue—facts that often overlap the facts of the crime, as suggested in the phrase "*locus delicti*" or place of the crime (*People v. More, supra,* 68 Cal. at p. 504).[8] (See, e.g., *People v. McGregar, supra,* 88 Cal. at p. 144; *People v. More, supra,* 68 Cal. at p. 504; *People v. Alviso, supra,* 55 Cal. at p. 233; *People v. Smith, supra,* 26 Cal.App.2d at pp. 190–191; *People v. Brock, supra,* 21 Cal.App.2d at p. 607; *People v. Morales, supra,* 91 Cal.App. at p. 734; *In re Application of O'Connor, supra,* 80 Cal.App. at p. 653; *People v. Coker, supra,* 78 Cal.App. at p. 159.)

In implicitly equating proof of venue with proof of a defendant's guilt of a crime, however, these past decisions overlooked the circumstance that although the People must prove both the facts underlying the crime (see § 1096) and also the facts underlying venue (e.g., *People v. Simon, supra,* 25 Cal.4th at p. 1105, fn. 16; see generally 4 Witkin & Epstein, Cal. Criminal Law, *supra,* Jurisdiction and Venue, § 47, p. 137), they must prove the facts of the crime beyond a reasonable doubt (§ 1096) but the facts of venue only by a preponderance of the evidence (e.g., *People v. Simon, supra,* 25 Cal.4th at p. 1105, fn. 16; see generally 4 Witkin & Epstein, Cal. Criminal Law, *supra,* Jurisdiction and Venue, § 48, pp. 137–138). As the Court of Appeal noted somewhat colorfully almost 70 years ago in *People v. Carter* (1935) 10 Cal.App.2d 387, 389 [52 P.2d 294], the "state gives no assurance to its [criminally] insubordinate citizens that the venue of their crimes will be fixed beyond a reasonable doubt; that doctrine applies only to the issue of guilt."

Further and more fundamentally, the past decisions failed to appreciate adequately what is suggested by the difference in the respective burdens

---

[8] In *Simon,* we added this note of caution: "Early cases frequently use the phrase '*locus delicti*' . . . to refer to the issue of venue. . . . [A]lthough under section 777 venue generally is set in the county in which the crime occurred, there are numerous statutes that authorize trial in a county other than the county in which the crime occurred. [Citation.] In such circumstances, a determination of the location of the crime does not necessarily resolve the venue question, and thus it is potentially misleading to equate the phrase '*locus delicti*' with the issue of venue." (*People v. Simon, supra,* 25 Cal.4th at p. 1100, fn. 11.)

of proof for the crime and for venue—namely that notwithstanding any overlapping of the facts underlying both the crime and venue, venue is a procedural issue involving the appropriateness of a place for a defendant's trial on a criminal charge, and not a substantive issue relating to the defendant's guilt or innocence of the crime itself. For example, in order to avoid dismissal of a criminal action because of prosecutorial destruction of evidence, the People must prove facts, by a preponderance of the evidence, establishing that the destruction of the evidence did not prejudice the defendant. (*People v. Zapien, supra,* 4 Cal.4th at p. 967.) Also, in order to avoid dismissal of an action because of violation of the defendant's right to a speedy trial, the People must prove facts, apparently by a preponderance of the evidence, establishing good cause for any delay. (E.g., *Owens v. Superior Court, supra,* 28 Cal.3d at p. 250.) Similarly, in order to avoid dismissal of an action because of the bringing of charges for a third time under the two-dismissal rule, the People under certain circumstances must prove facts, by a preponderance of the evidence, establishing that they acted without bad faith. (*Miller v. Superior Court, supra,* 101 Cal.App.4th at pp. 745–748.) In each of these circumstances, it never has been suggested that the pertinent factual determinations must or should be made *by the jury.* ▮ To the jury alone are entrusted the facts underlying guilt or innocence. The facts bearing on the defendant's right to a speedy trial, the two-dismissal rule, and prosecutorial destruction of evidence are distinct from guilt or innocence; they go to whether the defendant should be tried in the first place and therefore properly are determined by the court prior to the commencement of any trial. Likewise, the facts bearing on venue are themselves distinct from guilt or innocence, and similarly should be determined by the court before a trial is undertaken in a possibly inappropriate place.

In *People v. Megladdery, supra,* 40 Cal.App.2d 748, the Court of Appeal set forth what appears to be the sole rationale that has been explicitly articulated in a California decision in support of the rule that venue is a question of fact for the jury. The appellate court stated in this regard: "While it is true that a defendant does not have a constitutional right to have his case determined by the jury of any particular county [citation] it is also true that our statutory law has determined, with certain exceptions, that an accused person is answerable only in the jurisdiction where the crime, or some part or effect thereof, was committed or occurred. . . . It seems quite clear to us, that, from the standpoint of logic, the question of . . . local . . . jurisdiction [i.e., venue] . . . is fundamentally and necessarily a question of fact, and that in a criminal case, the burden of proving that fact rests on the prosecution. If this is so, it must follow that the determination of this fact rests with the jury." (*People v. Megladdery, supra,* 40 Cal.App.2d at p. 762.)

When we scrutinize *Megladdery*'s rationale for the rule that venue is a question of fact for the jury, we find it unpersuasive. Although it is true that

the People must prove the facts underlying venue by a preponderance of the evidence, it does not follow, contrary to the assertion in *Megladdery* (*People v. Megladdery, supra,* 40 Cal.App.2d at p. 762), that the People must prove those facts *to the satisfaction of the jury.*

Having found no persuasive explanation in prior California decisions for the rule that venue is a question of fact for the jury, we have surveyed the other jurisdictions that apply this rule in search of an alternative persuasive rationale—but have discovered none that supports retention of the rule in California. "These jurisdictions," as noted in a leading treatise, "offer a variety of explanations . . . . Venue is described as: 'a jurisdictional fact put in issue by a plea of not guilty'; [a] 'material allegation of the indictment' which must be proven along with other indictment allegations; an 'element of the crime' to be treated no differently than the substantive elements of the offense; and an 'issuable fact' most appropriately addressed in the course of the proof of the offense and presented to the finder of fact." (4 LaFave et al., Criminal Procedure, *supra,* § 16.1(g), p. 500, fns. omitted.) In jurisdictions in which it is treated either as a "jurisdictional fact" (*State v. Donnelly* (Iowa 1976) 242 N.W.2d 295, 297; see 4 LaFave et al., Criminal Procedure, *supra,* § 16.1(g), p. 500, fn. 237, citing additional authorities) or as an "issuable fact" (*People v. Plautz* (1971) 28 Mich.App. 621, 623 [184 N.W.2d 761]; see 4 LaFave et al., Criminal Procedure, *supra,* § 16.1(g), p. 500, fn. 240, citing additional authorities), venue apparently is deemed to implicate subject matter jurisdiction—which is not the case in California. And in jurisdictions in which it is viewed either as a "material allegation of the indictment" (*State v. Wardenburg* (1968) 261 Iowa 1395, 1402 [158 N.W.2d 147] [describing the view of other jurisdictions]; see 4 LaFave et al., Criminal Procedure, *supra,* § 16.1(g), p. 500, fn. 238, citing additional authorities) or as an "element of the crime" (*People v. Digirolamo* (1997) 179 Ill.2d 24, 48 [688 N.E.2d 116, 227 Ill.Dec. 779] [describing a view changed by subsequently enacted statutory law]; see 4 LaFave et al., Criminal Procedure, *supra,* § 16.1(g), p. 500, fn. 239, citing additional authorities), it is regarded, implicitly in the former jurisdictions and explicitly in the latter, as an element of whatever crime may happen to be charged—which also is not the case in California.

In view of the foregoing, we conclude that on its own merits, the rule adopted in prior California decisions—that venue is a question of fact for the jury—is not well founded. Our conclusion in this respect, however, does not by itself resolve the question whether this court can, and should, reject the rule and adopt in its place a rule that venue is a question of law for determination by the court.

As for the first question, whether this court *can* reject the rule that venue is a question of fact for the jury in favor of a rule that venue is a

question of law for the court, we reach an affirmative conclusion. The prior rule "merely is a judge-made . . . rule of procedure" (*People v. Barnum* (2003) 29 Cal.4th 1210, 1225 [131 Cal.Rptr.2d 499, 64 P.3d 788] [speaking of the prior rule that a trial court is required, under certain circumstances, to advise a self-represented defendant of the privilege against compelled self-incrimination]), required by neither statutory nor constitutional law. We would hesitate to discard the rule if the Legislature had "enacted statutes in reliance" on it (*People v. Cuevas* (1995) 12 Cal.4th 252, 270 [48 Cal.Rptr.2d 135, 906 P.2d 1290]) or had made it a "basic part of a . . . comprehensive statutory scheme" (*People v. Mendoza* (2000) 23 Cal.4th 896, 924 [98 Cal.Rptr.2d 431, 4 P.3d 265]). Here, however, the Legislature has done neither. Just as the drafters of pattern jury instructions have ignored the rule (see *People v. Simon, supra*, 25 Cal.4th at pp. 1090–1091, 1109), so too has the Legislature. Because the Legislature has not enacted any statutes incorporating the rule, this court has the authority, without awaiting any action by that body, to reconsider the prior judicial decisions adopting the rule.

As for the second question, whether we *should* reject the rule that venue is a question of fact for the jury in favor of a rule that venue is a question of law for the court, we here too reach an affirmative conclusion. To be sure, the rule that venue is a question of fact for the jury has "enjoyed widespread and long-standing following among the . . . courts in California" (*People v. Barnum, supra*, 29 Cal.4th at p. 1225 [prior rule of advisement of a self-represented defendant of privilege against compelled self-incrimination]), as well as in most other jurisdictions. But, as we suggested in *Simon*, there are strong reasons that counsel against retention of the rule. First, the rule impedes the purposes underlying venue provisions, especially their "principal purpose . . . from a defendant's perspective," that is "to protect a defendant from being required to stand trial in a distant and unduly burdensome locale" (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18)—by putting off any finding on venue until *after* "the defendant [has been] required to undergo the rigors and hardship of standing trial in an assertedly improper locale," and *after* "the state [has] incur[red] the time and expense of conducting a trial" in that county (*id.* at p. 1087). Second, the rule is "inconsistent with contemporary treatment of other, analogous . . . issues," inasmuch as venue is a procedural question involving the appropriateness of a place for a defendant's trial on a criminal charge, and not a substantive question relating to the defendant's guilt or innocence of the offense charged. (*Id.* at p. 1110, fn. 18.) Third, the rule poses the risk of an "unwarranted acquittal" when the jury returns a verdict of not guilty predicated solely on lack of proper venue. (*Ibid.*) Even if it were true, as the Court of Appeal in *Megladdery* suggested, that "no grave miscarriage of justice has occurred under this rule" (*People v. Megladdery, supra*, 40 Cal.App.2d at p. 766), we do not perceive any substantial reliance interest that would be upset or defeated by the revision of

this court-made rule "to serve the ends of justice" in the future. (*Katz v. Walkinshaw* (1903) 141 Cal. 116, 123; accord, *In re Marriage of Schiffman* (1980) 28 Cal.3d 640, 647 [169 Cal.Rptr. 918, 620 P.2d 579] (plur. opn. of Newman, J.).)

 Therefore, we conclude that the rule that venue is a question of fact for the jury should be rejected in favor of a rule that venue is a question of law for determination by the court. The California decisions cited above, and those to similar effect, are overruled or disapproved to the extent they are contrary to this conclusion.

Nevertheless, "[b]ecause adherence to the . . . rule [that venue is a question of fact for the jury] has been widespread among the . . . courts and long-standing, . . . the question arises whether we should apply our holding to the present case and to any other case not yet final on appeal . . . ." (*People v. Barnum, supra,* 29 Cal.4th at pp. 1225–1226.) We conclude that we should not do so. In *Simon,* we determined that the rule we "newly announced" in that decision—that a "defendant . . . who wishes to object to venue must make a specific objection to venue prior to the commencement of trial"— should apply "prospectively only." (*People v. Simon, supra,* 25 Cal.4th at p. 1108.) We make the same determination concerning the rule that we newly announce here. So long as a defendant in a case not yet final has preserved a claim of error based on violation of the now discarded rule, he or she may pursue that claim. (See *id.* at pp. 1108–1109.)

## III

### A

We now turn to the claims of error specific to the case at bar.[9] Defendant initially contends that the trial court erred by receiving from the first jury the verdicts finding him guilty of two counts of sale of cocaine base—verdicts that purportedly were "incomplete" because that jury was unable to agree on venue—and that the trial court acted in excess of its jurisdiction by thereafter declaring a mistrial on the issue of venue alone, empanelling the second jury,

---

[9] Defendant has requested that we take judicial notice that (1) Santa Rosa is located within Sonoma County; (2) Sonoma County, including Santa Rosa, comes within the 707 telephone area code; and (3) both San Francisco County and Marin County come within the 415 telephone area code. The People have not opposed the request. As a reviewing court, we may grant such a request (see Evid. Code, § 459, subd. (a)), and hereby do so, inasmuch as its object comprises "[f]acts . . . that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (*id.,* § 452, subd. (h)).

receiving the second jury's finding that venue was in Marin County, and rendering the ensuing judgment.

To our knowledge, the claim raised by defendant is a novel one. Neither defendant nor the People have identified any prior decision that addresses or resolves the issue whether a trial court may receive a guilty verdict from a jury that is unable to agree on venue, declare a mistrial on venue alone, and empanel another jury to consider venue.

■ We conclude that the trial court did not err or act in excess of its jurisdiction. As stated, venue does not constitute an element of any crime, and hence is not a necessary component of any verdict of guilt for any crime. In somewhat analogous circumstances, prior decisions have held that a trial court may receive a guilty verdict from a jury that is unable to agree on a penalty provision, declare a mistrial on the penalty provision alone, and empanel another jury to consider the issue of penalty. (See *People v. Bright* (1996) 12 Cal.4th 652, 661–662 [49 Cal.Rptr.2d 732, 909 P.2d 1354] [penalty provision for willfulness, premeditation, and deliberation that increases the punishment for attempted murder beyond the maximum otherwise prescribed]; *People v. Guillen* (1994) 25 Cal.App.4th 756, 760–763 [31 Cal.Rptr.2d 653] [penalty provision for weight in excess of 25 pounds that enhances the punishment for possession of cocaine for sale]; *People v. Schulz* (1992) 5 Cal.App.4th 563, 568–570 [7 Cal.Rptr.2d 269] [penalty provision for personal infliction of great bodily injury that enhances the punishment for attempted murder].) Defendant has been unable to identify anything in constitutional, statutory, or decisional law that would compel a different conclusion when the jury's inability to agree goes instead to the matter of venue.[10]

---

[10] Defendant relies on *People v. Avalos* (1984) 37 Cal.3d 216 [207 Cal.Rptr. 549, 689 P.2d 121], and *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56 [2 Cal.Rptr.2d 389, 820 P.2d 613], but each of those decisions clearly is distinguishable.

In *Avalos*, we characterized as incomplete a jury's verdict finding the defendant guilty of murder, because the jury failed to determine the degree of the murder, as it was required to do, as a result of its inability to agree on that issue. (*People v. Avalos, supra*, 37 Cal.3d at pp. 224–229.) Here, by contrast, the jury was able to, and did, agree completely on the issue of guilt. That the jury was unable to agree on the matter of venue had no effect on those guilt verdicts, and did not render them incomplete like the verdict in *Avalos*. The circumstance that, under the prior rule, venue was a question of fact for the jury does not affect this conclusion. Venue and the crime of sale of cocaine base are separate and independent determinations. Venue is not an element of the sale of cocaine base, but instead is merely a "procedural issue[] that do[es] not relate to . . . guilt or innocence" at all (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18). Accordingly, contrary to defendant's argument, a finding on venue by the jury was not necessary to the jury's verdicts finding him guilty of two counts of sale of cocaine base.

In *Marks*, we concluded that a trial court's erroneous failure, under section 1368, to hold a hearing on the defendant's mental competence prior to trial, after declaring a doubt concerning such mental competence, rendered the ensuing judgment of conviction and sentence of death a

## B

Defendant next contends that the trial court erred in its instructions to the second jury on the matter of venue.

The trial court gave the following instructions relating to venue: "Penal Code Section 781 provides as follows: [¶] When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the venue of such offense(s) is in either county. [¶] For purposes of venue under Penal Code Section 781 the phrase 'requisite to the commission of the offense' means requisite to achieving the offender's unlawful purpose. [¶] A defendant may commit a crime in a particular county even though he/she was not personally present in the county. [¶] A telephone call for the purpose of planning a crime which is received within the forum county may be adequate basis for venue, despite the fact the call originated from outside the county. [¶] In this case the forum county is Marin County. [¶] The prosecution has the burden of establishing facts as to the issue of venue. [¶] The prosecution must prove venue by a preponderance of the evidence."

Shortly after commencing deliberations, the second jury asked the trial court by note: "The question is: are we deciding the more appropriate place for the trial OR is Marin an appropriate place? [¶] The first part of the question means to me, Where did the bulk of the crime happen. Is that a valid interpretation? [¶] Also please clarify the following sentence: [¶] A telephone call for the purpose of planning a crime which is received w/i the foreign [*sic*: evidently for "forum"] county may be adequate basis for venue, despite the fact the call originated from outside the county." After conferring with the prosecutor and defense counsel, the trial court responded by note: "As to (1), the question is *not*, based on the facts and the instructions I have previously given you, whether Marin County is '*the more* appropriate place' for trial or 'the more appropriate' venue, but whether Marin County is '*an* appropriate place,' or '*an* appropriate venue' that is, whether, under the facts and the instructions I have previously given you, Marin County has venue, even though another county may *also* have venue. [¶] As to (2), you have quoted . . . [a particular portion of the instructions given]. You should apply that law, as well as the other instructions I have given you, to the facts as you determine them, and in this way arrive at your verdict." (Italics added in place of underscoring in original.)

---

nullity, because by its terms section 1368 suspended the criminal proceedings pending resolution of the issue of mental competence. (*People v. Superior Court* (*Marks*), *supra*, 1 Cal.4th at pp. 63–71.) Here, however, the criminal proceedings were not suspended by any provision analogous to section 1368 after the first jury returned its verdicts finding defendant guilty of two counts of sale of cocaine base, but was unable to agree on venue.

Defendant's claim, in substance, is that the trial court's instructions on venue were erroneous because they incorrectly stated the law on the issue and effectively directed an adverse finding by removing the question from the jury's consideration. As we shall explain, we find no error.

■ The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law (*People v. Berryman* (1993) 6 Cal.4th 1048, 1089 [25 Cal.Rptr.2d 867, 864 P.2d 40], overruled on another point by *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 [72 Cal.Rptr.2d 656, 952 P.2d 673]) and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration (see *People v. Figueroa* (1986) 41 Cal.3d 714, 723–741 [224 Cal.Rptr. 719, 715 P.2d 680]; *People v. Leonard* (2000) 78 Cal.App.4th 776, 794 [93 Cal.Rptr.2d 180]).

We conduct our analysis of defendant's claim of error with the recognition that, under the prior rule, venue was a question of fact for the jury.

After independent review, we conclude that the trial court's instructions on venue correctly stated the law on the issue.

To begin with, the trial court's instructions correctly informed the jury as to the burden and standard of proof pertaining to venue. As stated, the People must prove, by a preponderance of the evidence, the facts underlying venue. The trial court expressly instructed the jury that "[t]he prosecution has the burden of establishing facts as to the issue of venue" and "must prove venue by a preponderance of the evidence." Nothing that the trial court stated in its response to the jury's questions during deliberations undermined that instruction.

In addition, as will appear, the trial court's instructions correctly informed the jury as to the venue requirement that pertains to this case under section 781, and its response to the jury's questions during deliberations simply clarified that the issue of venue turned on whether Marin County was *an* appropriate place for trial rather than *the more* appropriate place.

■ In determining the meaning of section 781, we construe the provision liberally in order to achieve its underlying purpose, which is to expand venue beyond the single county in which a crime may be said to have been committed (see, e.g., *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1118 [124 Cal.Rptr.2d 373, 52 P.3d 572]; *People v. Simon, supra,* 25 Cal.4th at p. 1109; *People v. Bismillah* (1989) 208 Cal.App.3d 80, 85 [256 Cal.Rptr. 25]; cf. *Price v. Superior Court, supra,* 25 Cal.4th at p. 1055 [concluding that provisions like § 781 are "remedial and for that reason [are] construed

liberally to achieve the legislative purpose of expanding criminal jurisdiction"])—consistently, of course, with "protect[ing] a defendant from being required to stand trial in a distant and unduly burdensome locale" (*People v. Simon, supra*, 25 Cal.4th at p. 1110, fn. 18).

What is important for present purposes is the phrase in section 781 that speaks of "acts or effects . . . requisite to the consummation" of a crime which establish venue in any county in which they occur. The words "acts . . . requisite to the consummation" of a crime establishing venue in a county have been liberally construed to embrace *preparatory* acts (*People v. Crew, supra*, 31 Cal.4th at p. 836; *People v. Simon, supra*, 25 Cal.4th at p. 1109), such as the following: the theft of firearms in a county leading to a murder (see *People v. Price* (1991) 1 Cal.4th 324, 384–386 [3 Cal.Rptr.2d 106, 821 P.2d 610]); meetings with an accomplice and victims in a county to make arrangements pursuant to a scheme to produce a pornographic film, resulting in the victims' murder (see *People v. Douglas* (1990) 50 Cal.3d 468, 492–494 [268 Cal.Rptr. 126, 788 P.2d 640]); a kidnapping in a county leading to a murder (see *People v. Powell* (1967) 67 Cal.2d 32, 62–63 [59 Cal.Rptr. 817, 429 P.2d 137]); and striking and fleeing from a police officer in a county in an automobile in order to avoid taking a field sobriety test, resulting in assault with a deadly weapon (*People v. Bismillah, supra*, 208 Cal.App.3d at pp. 85–87). By the same token, the words "effects . . . requisite to the consummation" of a crime establishing venue in a county should be liberally construed to embrace *preparatory* effects, such as the placement of a telephone call into a county leading to a crime. In *People v. Price* (1989) 210 Cal.App.3d 1183, 1189–1192 [259 Cal.Rptr. 282]—on which the trial court relied in formulating its instructions—the Court of Appeal so construed the words in question, holding, on facts similar to those here involving the sale or transportation of cocaine, that a "telephone call for the purpose of planning a crime received within [a] county is an adequate basis for venue, despite the fact the call was originated outside the county" (*People v. Price, supra*, 210 Cal.App.3d at p. 1192).[11] Although we recognize that the holding of the Court of Appeal in *Price* represents the most liberal construction of the words "effects . . . requisite to the commission" of a crime reflected in a reported decision, we cannot find its holding unsound.

 Evidently in order to avoid this conclusion, defendant proposes a considerably narrower construction of section 781. First, he reads section 781 as though it spoke only of "*acts* . . . requisite to the consummation" of a crime establishing venue in a county, and not also of "*effects*," a word that proves

---

[11] *People v. Price, supra*, 210 Cal.App.3d 1183, which had been decided by Division Three of the Court of Appeal for the Fourth Appellate District, subsequently was overruled by the same division on another point in *People v. Meza* (1995) 38 Cal.App.4th 1741, 1748 [45 Cal.Rptr.2d 844].

crucial here. Second, defendant goes on to attempt to apply a gloss to "acts" in order to transform the reference into "acts *deliberately targeting a county or its residents*." Defendant argues that without such a gloss, section 781 would fail to achieve the object of venue provisions from the defendant's perspective, namely, to "provide for trial in a county that bears a reasonable relationship" to the crime in question and thereby "restrict[] . . . the discretion of the prosecution to file charges in any locale within the state that it chooses, an option that, if available, would provide the prosecution with the considerable power to choose a setting that, for whatever reason, the prosecution views as favorable to its position or hostile or burdensome to the defendant's" (*People v. Simon, supra,* 25 Cal.4th at p. 1095). The gloss applied by defendant, however, inserts into section 781 something that is not present and that contracts venue rather than extends it. Indeed, absent from section 781—as from the general venue provision of section 777 and from other venue provisions as well (see, *ante,* at pp. 209–210, fn. 7)—is a requirement that the defendant possess any mental state whatever with respect to a county, for purposes of venue. The requirement of "effects" in a county "requisite to the consummation" of a crime satisfies the need for a reasonable relationship between the crime and the county and, as a result, restricts the People's charging discretion within tolerable bounds. Moreover, the gloss applied by defendant would purchase freedom from manipulation of venue by the People at the cost of allowing similar manipulation by the defendant, who then could choose only a favorable county, or only the residents of a favorable county, for his or her criminal activity.

After independent review, we also conclude that the trial court's instructions on venue did not effectively direct a finding adverse to defendant by removing the issue from the jury's consideration. The trial court's instructions, as already discussed, correctly informed the jury on the matter of venue and on the pertinent burden and standard of proof, and the aspects of the instructions challenged by defendant amounted merely to pinpoint instructions properly "relating particular facts to . . . [the] issue" of venue (*People v. Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847]).

## C

Defendant also contends that the evidence is insufficient to support the second jury's finding on venue.

■ Applying, with appropriate modification, the standard employed in reviewing a claim of insufficient evidence to sustain a guilty verdict under California decisional law (see *People v. Johnson* (1980) 26 Cal.3d 557, 575–579 [162 Cal.Rptr. 431, 606 P.2d 738]), we believe that a rational trier of fact certainly could have found that the People had proved, by a preponderance of the evidence, that Marin County was an appropriate place for trial

under section 781. There was evidence that defendant placed *several* telephone calls—not merely one—to Marin from San Francisco as part of the negotiations leading up to his two sales of cocaine base in San Francisco. Defendant's telephone calls to Marin constituted "effects . . . requisite to the consummation" of the crimes in question.

 Defendant argues against our conclusion, but we find his position unpersuasive. To begin with, the circumstance that defendant may not have placed a telephone call to Marin deliberately, or even knowingly, would not defeat venue in that county. Under section 781, venue turns on the presence or absence, in a county, of acts or effects constituting the crime or requisite to the commission of the crime—not on the defendant's state of mind or on the soundness of any beliefs that he or she might hold as to the location of those acts or effects. Further, contrary to defendant's contention, it is immaterial that venue in a civil action on a sales contract is appropriate (pursuant to section 395 of the Code of Civil Procedure and *Friedman Bag Co., Inc. v. Shrier* (1961) 194 Cal.App.2d 561, 564–565 [15 Cal.Rptr. 38]) in the county, among other locations, in which a seller accepts a buyer's offer. We here are concerned with a criminal action for the sale of cocaine base and with section 781—*not* with a civil action on a sales contract under Code of Civil Procedure section 395 or *Friedman Bag Co.*, which implicate distinctly different concerns.

We recognize that defendant had a legitimate interest, served by section 781 among other venue provisions, in possessing a "safeguard against being required to stand trial in an unrelated and potentially burdensome distant location." (*People v. Simon, supra,* 25 Cal.4th at p. 1103.) But by being required to stand trial in Marin rather than San Francisco, defendant hardly found himself in that type of location. Marin, of course, is not distant from San Francisco, but rather borders it. The two counties share the same 415 area code, and thus telephone calls made to a number with that area code could be received in one or the other of those counties. Neither was Marin unrelated to defendant's crimes, particularly inasmuch as defendant placed several telephone calls to the county in the negotiations leading up to his two sales of cocaine base.

As noted, Detective Yamanoha lied to defendant, stating that he was in Santa Rosa in Sonoma County, the county immediately north of Marin, when he actually was in Marin. Yamanoha told the lie to defendant in order to further his attempt to buy cocaine base from him in Marin and apparently in order to arrest him there at an opportune time. The circumstance that Yamanoha lied to defendant seems unremarkable: evidently, Yamanoha's object was to persuade defendant to come to Marin, which was both the county in which (or to whose residents) he believed defendant had made sales

of cocaine base and the county in which he himself possessed his fullest authority as a peace officer (see § 830.1, subd. (a)), and his means of persuading defendant to come to Marin was to present the county as a reasonable halfway point between San Francisco and Santa Rosa. In any event, the circumstance that Yamanoha lied to defendant does not establish that it was unfair to try defendant in Marin. On the contrary, because defendant himself placed at least one telephone call to Yamanoha at a telephone number with a 707 area code—the area code encompassing Sonoma County—defendant cannot reasonably claim that he could not have known that the negotiations leading up to his two sales of cocaine base involved a county other than San Francisco, nor can he reasonably claim that requiring him to stand trial in Marin, which is closer to San Francisco than Sonoma County, was in any manner oppressive or unduly burdensome. Under these circumstances, we conclude that venue in Marin County clearly was proper under section 871.[12]

### D

Defendant finally contends that by drawing from Marin County the first jury (which returned the verdicts finding him guilty of two counts of sale of cocaine base), the trial court violated his right, under the Sixth Amendment to the United States Constitution and section 16 of article I of the California Constitution, to trial by jurors of the vicinage.

In *Price v. Superior Court, supra*, 25 Cal.4th 1046, we concluded that the vicinage right embodied in the Sixth Amendment, which is the right of an "accused . . . to a . . . trial . . . by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," applies only against the United States and is not incorporated by the Fourteenth Amendment's due process clause for operation against the states. (*Price v. Superior Court, supra*, 25 Cal.4th at pp. 1057–1069.) We also concluded that the vicinage right implied in article I, section 16 of the California Constitution (see *Price v. Superior Court, supra*, 25 Cal.4th at pp. 1071–1078), constitutes simply the right of an accused to a trial by an impartial jury drawn from a place bearing some reasonable relationship to the crime in question (*id.* at p. 1075).

---

[12] Contrary to the assertion in the dissent, "[f]orum shopping" is *not* "what this case is about." (Dis. opn. of Brown, J., *post*, at p. 224.) Forum shopping, of course, is "[t]he practice of choosing the most favorable jurisdiction . . . in which a claim might be heard." (Black's Law Dict. (7th ed. 1999) p. 666.) It is plain that Detective Yamanoha did not engage in any such practice. As defendant himself admits, Yamanoha presented the case in the first instance to the San Francisco District Attorney for prosecution in San Francisco—which the dissent characterizes as the *least* favorable jurisdiction. It was only after the San Francisco District Attorney declined to prosecute, apparently for reasons of policy, that Yamanoha was compelled to approach the Marin District Attorney.

Under *Price*, defendant's claim clearly lacks merit. Defendant did not suffer any violation of his Sixth Amendment vicinage right, because that provision does not apply in state court proceedings. In order to preserve the point for further review, defendant expresses disagreement with our conclusion in *Price* that the Sixth Amendment vicinage right operates only with respect to federal court proceedings, but he fails to offer any basis for us to revisit our holding. Neither did defendant suffer any violation of his vicinage right under article I, section 16 of the California Constitution, because, as is apparent above, the conduct of his trial in Marin County bore a reasonable relationship to the charge that he engaged in two sales of cocaine base. On this point, defendant does not raise any arguments other than those that we have rejected above.

## IV

For the reasons stated above, the judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Dissenting.—I agree venue is a question of law for the court, to be decided prior to trial; I also agree we should not apply this new rule to the present case or to any other case not yet final on appeal.

However, I do not agree Marin County was a proper venue for this case.

My disagreement does not arise from any sympathy with defendant, who would likely have sold cocaine to the Man in the Moon, so long as he could deliver it within the friendly prosecutorial confines of San Francisco. However, I am concerned that by turning a blind eye to forum shopping by law enforcement authorities, the majority is inadvertently encouraging it.

"[V]enue provisions applicable to criminal proceedings serve a variety of purposes." (*People v. Simon* (2001) 25 Cal.4th 1082, 1095 [108 Cal.Rptr.2d 385, 25 P.3d 598] (*Simon*).) "[F]rom the perspective of a defendant, statutory enactments that provide for trial in *a county that bears a reasonable relationship to an alleged criminal offense* also operate as a restriction on the discretion of the prosecution to file charges in any locale within the state that it chooses, an option that, if available, would provide the prosecution with the considerable power to choose a setting that, for whatever reason, the prosecution views as favorable to its position or hostile or burdensome to the defendant's." (*Ibid.*, italics added.) "[V]enue provisions also serve to protect the interests of the community in which a crime or criminal activity occurs, '*vindicat[ing] the community's right to sit in judgment on crimes committed*

*within its territory.' (People v. Guzman* (1988) 45 Cal.3d 915, 937 [248 Cal.Rptr. 467, 755 P.2d 917].)" *(Ibid.,* italics added.)

The balancing test proposed by the Attorney General, which I will discuss below, respects and serves the purposes of the venue provisions that we reiterated in *Simon*: that trial occur in a county with a reasonable relationship to the alleged criminal offense, thereby vindicating the community's right to sit in judgment on crimes committed within its territory. Regrettably, the test adopted by the majority invokes the letter of the venue provisions while betraying their spirit.

Forum shopping is what this case is about. The Marin County Sheriff's Department first sought to have this case prosecuted in San Francisco, the jurisdiction in which the Marin authorities obviously believed the crime to have occurred. It was only after the San Francisco District Attorney' s Office declined to prosecute that the Marin County Sheriff's Department took the case to the Marin County District Attorney's Office.

Detective Yamanoha of the Marin County Sheriff's Department had information that defendant's confederate was selling cocaine in Marin, or at least to Marin residents. Detective Yamanoha's subsequent investigation revealed that defendant was willing to sell cocaine to someone who said he was calling from *Sonoma* County. Detective Yamanoha told defendant he was calling from Sonoma County because he did not want defendant to know he was actually calling from Marin County.[1] Defendant insisted upon delivering the cocaine in San Francisco.

The frustration of the Marin County Sheriff's Department at its inability to lure defendant out of San Francisco, where he apparently believed he could sell drugs with impunity to residents and nonresidents alike, is understandable. However, frustration can be a breeding ground for abuse, and by condoning the forum shopping engaged in here, the majority teeters on a slippery slope.

The following hypothetical illustrates just how slippery it is. Suppose that X sells drugs exclusively to San Francisco residents. X's self-imposed territorial sales restriction does not manifest any concern over the welfare of citizens of other counties; he simply wishes to be able to claim sanctuary in San Francisco. Whatever his motivation, though, he is intentionally restricting his criminal activity to San Francisco. Suppose further that a San Francisco narcotics officer is frustrated by unwillingness on the part of the San

---

[1] Since Detective Yamanoha believed defendant and his confederate had a customer base in Marin County, it is baffling that he was so intent on their not knowing he was calling from Marin County.

Francisco District Attorney Office's to prosecute X. The majority provides that officer with a road map for forum shopping.

Suppose the San Francisco officer finds sympathetic deputy district attorneys in Imperial and Marin Counties, and that the officer, while physically present in each of those counties, places calls to X in which he arranges to buy drugs from X, with the transactions to be executed in San Francisco. Suppose the officer tells X he is a San Franciscan, calling from San Francisco, and that he ultimately, as arranged, picks up the drugs from X in San Francisco. Finally, suppose the officer uses a cell phone with a 415 area code that is consistent with his cover story.

In this hypothetical, because X would have no reason to believe he was departing from his self-imposed rule of selling drugs only to San Francisco residents, and because he would not in fact have sold drugs to anyone with a connection to Imperial County, Imperial County could not be said to have a "reasonable relationship" to his criminal activity. (*Simon, supra,* 25 Cal.4th at p. 1095.) Accordingly, the citizens of Imperial County would not have an interest in " 'vindicat[ing] the community's right to sit in judgment on crimes committed within its territory.' " (*Ibid.*) Nevertheless, under the rule announced by the majority today, venue would lie in El Centro, 600 miles and a world view apart from San Francisco, simply because the officer, contrary to what he told X, was in Imperial County when he placed one of the phone calls. (Maj. opn., *ante,* at pp. 28–30.)

X would presumably object to venue in Imperial County on the ground that standing trial in El Centro would be unduly burdensome on him or his witnesses. However, even if he were successful in this objection, this would be but a minor setback for our hypothetical San Francisco officer, informed forum shopper that he is. The officer has a fallback—Marin County and the majority have already certified the appropriateness of venue there (maj. opn., *ante,* at pp. 221–222), even though Marin County would have no more at stake in the case than would Imperial.

Curiously, the majority is less sensitive to the abuse of forum shopping than is the Attorney General. There is no requirement, the majority states, that a defendant "possess any mental state whatever with respect to a county, for purposes of venue." (Maj. opn., *ante,* at p. 220.)

The Attorney General, on the other hand, proposed a balancing test for determining venue in which the defendant's mental state would be one of the

key factors. "If the crime did not occur in the forum county, one needs to weigh the following factors to decide whether venue is permissible there: (1) the extent to which the defendant either (a) used the forum county to facilitate his criminal purpose or (b) otherwise harmed the forum county; (2) the extent to which the defendant *should have known* he was (a) using the forum county to facilitate his criminal purpose or (b) otherwise harming the forum county; (3) the extent to which trial in the forum county will impose logistical hardship on the defendant; and (4) the extent to which the prosecution gained tactical advantage by acting improperly to create venue in the forum county." (Italics added.)

If the balancing test proposed by the Attorney General is applied to the facts of the foregoing hypothetical, venue would clearly be improper in Marin County. X had no reason whatever to believe he was harming Marin County or using it to facilitate his criminal purposes. And it would be highly artificial to say that Marin County was harmed, nevertheless, by X just because the San Francisco officer placed a call from there, when the officer told X he was a San Franciscan calling from San Francisco. Because the San Francisco District Attorney's Office would not prosecute X, the San Francisco officer clearly gained a tactical advantage by employing a stratagem in order to create venue in Marin County. Nevertheless, despite the fact that all of the equities identified by the Attorney General would run against trying this hypothetical case in Marin County, the majority would uphold a finding of venue there.

Applying the Attorney General's test to the facts of this case, I conclude venue was improper in Marin County, but would have been proper in Sonoma County. Detective Yamanoha told defendant and his confederate he was from Santa Rosa, which is in Sonoma County. Therefore, defendant had reason to believe he was harming Sonoma County and using it to facilitate his criminal purpose. On the other hand, defendant had no reason to believe he was harming Marin County or using it to facilitate his criminal purpose. The mere fact that Detective Yamanoha, while claiming to be in Sonoma County when he placed his calls to defendant, was actually in Marin County did not create a "reasonable relationship" between defendant and Marin. (*Simon, supra,* 25 Cal.4th at p. 1095.) Finally, the Marin County Sheriff's Department clearly gained an advantage by taking this case to the Marin County District Attorney's Office after the San Francisco County District Attorney's Office declined to prosecute it.

I would reverse the judgment of the Court of Appeal, which affirmed the judgment of conviction.