Filed 4/14/16  P. v. Perez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ANGEL PEREZ,<br><br>    Defendant and Appellant. | F068993<br><br>(Super. Ct. No. CF06901120)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Jose Angel Perez appeals from a judgment of conviction on two counts of first degree murder.  The prosecution's case was based on a theory of aiding and abetting liability.  Perez argues, and the Attorney General concedes, that the trial court committed

prejudicial error by misinforming jurors as to the mental state required for aiding and abetting a premeditated murder. The trial court instructed that an aider and abettor need not act willfully, deliberately, and with premeditation in order to be guilty of first degree premeditated murder so long as the actual killer behaved with such intentions. This instruction was antithetical to the California Supreme Court's holding in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*). Under *Chiu*, aiding and abetting liability for first degree premeditated murder is contingent upon proof of the defendant's own mens rea. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a shooting that occurred on February 1, 2006 outside of an apartment complex in southeast Fresno. There were two shooters, Perez and Sokmorn Chea, both of whom were members of a criminal street gang known as the "Asian Boyz." Perez had been armed with a .45 caliber handgun, and Chea with an AK-47 assault rifle. Fellow gang members drove the men to the vicinity of South Peach and East Tulare Avenues, a neighborhood associated with a rival group called the "Tiny Rascal Gang," and dropped them off near the apartment complex. It was just after midnight when Perez and Chea shot multiple rounds in the direction of the apartments. A bullet fired from Chea's AK-47 struck and killed Nath Ouch, an innocent bystander who was in her third trimester of pregnancy. The unborn child also died.

Perez fled to Mexico after the shooting and remained there for five years. Meanwhile, Chea and several accomplices were arrested and prosecuted for the victims' deaths. Chea was found guilty of first degree murder and sentenced to life in prison without the possibility of parole. Perez was captured in 2011 and brought to trial in 2014 on charges of murder with the special circumstances of multiple murder, lying in wait, and gang-related killing (Pen. Code,[1] §§ 187, 190.2, subd. (a)(3), (15), (22)). Further

---

[1] All further statutory references are to the Penal Code.

gang and firearm-related enhancement allegations were added to these charges pursuant to sections 186.22, subdivision (b)(1), and 12022.53, subdivisions (d) and (e)(1).

Trial evidence suggested that Perez and Chea had fired their weapons haphazardly. Crime scene technicians found bullet damage and strike marks on multiple buildings, pavement, parked cars, and a street sign, as well as along a chain-link fence behind which the perpetrators were believed to have stood during the shooting. A total of 38 shell casings were collected at the crime scene, eight of which came from the handgun used by Perez. A prosecution witness to whom Perez had admitted guilt testified that Perez claimed to have fired his rounds into the air.

The evidence raised questions regarding Perez's state of mind at the time of the incident. A former gang member who had furnished the .45 caliber pistol used in the crime testified to his understanding, from speaking with Perez, that Perez only intended to intimidate rival gang members, i.e., "to put fear into th[o]se people." Jurors also heard the following statements made by Perez during a custodial interview with police: "I didn't go out there trying to kill nobody . . . I'm sorry, but it wasn't [my] intention, it wasn't [my] intention to kill nobody that day. Never was . . . Nothing was supposed to happen. Nothing was supposed to happen." When asked about Chea's actions, Perez said, "I don't know why he got fired like that. [*Sic*] I can't tell you why because he gots [*sic*] his own mind. I can't tell you what he did. I can't tell you why. . . I don't know why he did it. I tried to – I don't know – I still don't understand why he pulled that –" Perez also insisted that he was drunk and under the influence of the street drug known as Ecstasy on the night in question. His claim of intoxication was supported by the testimony of various prosecution witnesses.

Jurors deliberated for approximately seven hours before returning a verdict. At roughly the halfway point of its deliberations, the jury submitted a question concerning the element of mens rea: "In instruction #400, it is said that an aider and abettor is just as guilty as the perpetrator – how does this apply to instruction #521, in regard to

3.

willfulness, deliberation, and premeditation for the defendant?  Does intent transfer from perpetrator to the defendant via aiding and abetting?"[2]  The trial court provided the following response:

> As you have noted, Instruction 400 states that an aider and abettor is just as guilty as the perpetrator.  Instruction 401 requires, among other things, that an aider and abettor know that the perpetrator intended to commit the crime and intended to aid and abet the perpetrator in committing that crime.
>
> If the people have proved, beyond a reasonable doubt, that the perpetrator committed the crime of murder willfully and with deliberation and premeditation, and that the defendant aided and abetted that murder, in order to find the defendant guilty of murder in the first degree, it is not necessary that the defendant also have acted willfully and with deliberation and premeditation.
>
> In deciding whether the perpetrator acted willfully and with deliberation and premeditation, you may consider, the voluntary intoxication, if any, of the perpetrator.  In addition to what I have already told you, you may also consider the voluntary intoxication of the defendant in deciding whether the defendant knew that the perpetrator intended to commit the crime and whether he intended to aid and abet the commission of that crime.
>
> However, for you to find any of the special circumstances true, you must find that the people have proved, beyond a reasonable doubt, that the defendant personally acted with the intent to kill.

Perez was found guilty of two counts of first degree murder.  True findings were made on all factual sentencing allegations except for the special circumstance of lying in wait.  The lying in wait allegations were rejected as not true.  The trial court sentenced

---

[2] We have corrected several misspellings contained in the original written request.

4.

Perez to two consecutive terms of life in prison without the possibility of parole, plus 50 years to life for the firearm enhancements.

## DISCUSSION

Appellant's claim of instructional error is subject to de novo review. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "If conflicting instructions on the mental state element of an alleged offense can act to remove that element from the jury's consideration, the instructions constitute a denial of federal due process and invoke the *Chapman* [*Chapman v. California* (1967) 386 U.S. 18, 24] 'beyond a reasonable doubt' standard for assessing prejudice." (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1128.) The parties agree that the trial court committed reversible error under the *Chapman* standard by misstating the law on aiding and abetting in the context of first degree premeditated murder.

"First degree murder, like second degree murder, is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation, which trigger a heightened penalty. [Citation.] That mental state is uniquely subjective and personal. It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death." (*Chiu*, *supra*, 59 Cal.4th at p. 166.)

"[O]utside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) In formulating its response to the jury's question, the trial court below construed the opinions in *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*) and *People v. Lee* (2003) 31 Cal.4th 613 as holding that an aider and abettor may be guilty of murder even if he or she did not personally act willfully and with deliberation, and that such vicarious liability does not require the mental state of premeditation. However, those two cases addressed the crime of *attempted* murder and

5.

were concerned with the mental state required for imposition of the penalty provisions in section 664, subdivision (a).  The *Favor* opinion specifically involved an application of the natural and probable consequences doctrine.  The California Supreme Court distinguished both opinions in the recent *Chiu* case, and held that a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine.  (*Chiu*, *supra*, 59 Cal.4th at pp. 162-163, 167.)

"Aiders and abettors may still be convicted of first degree premeditated murder based on direct aiding and abetting principles.  [Citation.]  Under those principles, the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.  [Citation.]  Because the mental state component–consisting of intent and knowledge–extends to the entire crime, it preserves the distinction between assisting the predicate crime of second degree murder and assisting the greater offense of first degree premeditated murder."  (*Chiu*, *supra*, 59 Cal.4th at pp. 166-167.)  Thus, for a defendant to be convicted of first degree murder as an aider and abettor, it must be proven that he or she personally acted willfully, deliberately, and with premeditation.  (*Id*. at p. 167.)  The trial court's instructions to the contrary were erroneous.

We agree with the parties on the issue of prejudice.  "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground."  (*Chiu*, *supra,* 59 Cal.4th at p. 167.)  Given the jury's rejection of the lying in wait allegations and its stated confusion regarding the mens rea requirement, we cannot conclude beyond a reasonable doubt that its verdict was based on a finding that Perez acted with the mental state required for first degree murder.

As to the question of remedy, Perez submits that we should "remand for resentencing."  The Attorney General believes the People must be given a choice to either

accept a reduction of Perez's convictions to second degree murder or to retry him on the original counts. Case law supports respondent's position. "When a greater offense must be reversed, but a lesser included offense could be affirmed, we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense." (*People v. Kelly* (1992) 1 Cal.4th 495, 528.) Perez admits in his briefing that he was culpable as an aider and abettor for the actus reus of Chea's unlawful behavior, thus subjecting him to liability for second degree murder. (See *Chiu*, *supra*, 59 Cal.4th at pp. 165-166.) In *Chiu*, the high court approved of "allowing the People to accept a reduction of the conviction to second degree murder or to retry the greater offense." (*Id*. at p. 168.) We will follow the same course here.

In summary, the trial court committed reversible error by misinstructing the jury on a key legal principle. The matter will be remanded for further proceedings. On remand, the People shall have the option to (1) accept a reduction of Perez's counts of conviction to second degree murder, or (2) retry him on the charges of first degree murder under a theory of direct aiding and abetting liability. Should the People choose the first option, all true findings of special circumstances under the provisions of section 190.2 must be vacated. (See *People v. Cooper* (1991) 53 Cal.3d 771, 828 [special circumstances under section 190.2 apply only when a defendant is convicted of first degree murder].) Perez would thus stand convicted of two counts of second degree murder with true findings on the enhancement allegations under sections 186.22, subdivision (b)(1), and 12022.53, subdivisions (d) and (e)(1), and he would be resentenced accordingly. In the event that Perez is retried for first degree murder, the prosecution may only present one multiple-murder special circumstance allegation for the jury's consideration. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 422; *People v. Diaz* (1992) 3 Cal.4th 495, 565 ["When a defendant kills more than one person, the prosecution should allege only one multiple-murder special circumstance; to charge more

than one such special circumstance would improperly inflate the seriousness of the defendant's conduct."].)

## DISPOSITION

The judgment is reversed and this matter is remanded for further proceedings as specified above.

_____

GOMES, Acting P.J.

WE CONCUR:

_____

FRANSON, J.

_____

PEÑA, J.