Filed 12/2/21  P. v. Garza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060383 |
| v. | (Super. Ct. No. C1356498) |
| LOUIE GARZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Santa Clara County, Julia L. Alloggiamento, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Katie L. Stowe, Deputy Attorneys General.

\*          \*          \*

Appellant was convicted of killing his cousin and sentenced to 84 years to life in prison. He contends his murder conviction must be reversed because of two instructional errors, and that pursuant to several newly enacted Senate Bills, his sentence must be vacated and the matter remanded for a new sentencing hearing. We conclude there were no reversible errors, but agree appellant is entitled to a new sentencing hearing. We affirm the conviction and remand for further proceedings.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prosecution Case-in-Chief*

1. *Testimony of the Victim's Wife*

In May 2013, Ralph Gomez and his wife Vicky were living at her brother's house in San Jose. On the morning of May 8, appellant, who is Gomez's cousin, and his wife Carmen came over to visit. While the group conversed in the kitchen, appellant, Carmen and Gomez drank beer and shared a phencyclidine (PCP) cigarette. Appellant paid Gomez $30 for another PCP cigarette.

When Vicky noticed Carmen had stopped talking and was propping her head up with her hands, Vicky twice asked Carmen what was wrong, but received no response. Appellant then pulled out a gun, pointed it at Gomez, and said, "'What? What? What? I don't give a fuck. I'm going to kill everybody in this fucking house.'" Gomez remained seated, "hunched over with his hands over his head and his elbows down by his knees." When appellant said, "'What about that girl?'" Gomez responded, "'What girl?'"

Vicky slowly backed out of the kitchen and went to a bedroom to find a cell phone, but was unsuccessful. She decided to get help, and as she began climbing out through the window, she heard Gomez say, "'If you're going to fucking . . .'" which she took to mean, "If you're going to do it, just do it." Then she heard a gunshot. Vicky was afraid appellant would shoot her next. She ran to the next-door neighbor's house and

2

knocked on the door, but no one answered. After knocking on several other neighbors' house and receiving no response, Vicky hid behind a car for about 15 minutes.

After Vicky saw appellant and Carmen leave, she went back into the house where she saw Gomez lying face down on the floor in the living room with a gunshot in the back of his head. She used a neighbor's phone to call her son and tell him that appellant had shot Gomez. Then she called 911.

2. *Other Evidence*

San Jose Police Sergeant Jacqueline Lonero responded to the scene. She saw Gomez lying face down on the floor, with his fingers laced together above his head. Other than an overturned chair, there was nothing that made Lonero believe there had been any fight or struggle.

The autopsy showed Gomez died from the gunshot wound to the back of his head, which was almost immediately fatal. Gomez was killed by a hollow-point bullet, a type of ammunition designed to cause more lethal damage than similar caliber ammunition.

San Jose Police Sergeant Stewart Davies testified he interviewed Vicky at the crime scene, and obtained arrest warrants for appellant and Carmen and search warrants for appellant's residence and Acevedo's vehicle. The police were able to arrest Carmen at the residence, but appellant could not be located. In appellant's home, police found two live bullet cartridges in a glove inside of a dresser drawer, an empty handgun case, and a safe with boxes of ammunition. Police found four live bullet cartridges in the trunk of Carmen's car.

Appellant's daughter testified her father visited her a few days after the shooting, at her Oregon house. Appellant confessed to shooting Gomez in the head, stating it was "me or him" and that he needed to hurt Gomez before Gomez hurt him. He also said that he was upset because Gomez had "ripped him off for some money in a drug deal." After shooting Gomez, he "kicked [Gomez] in the head like the little bitch that he

3

was." He then buried the gun "where the cops [would] never find it." Appellant told his daughter he knew the police were looking for him and had come to say goodbye.

On July 22, 2013, appellant left a voicemail message for Vicky's niece, apologizing for "what happened," claiming his "wife didn't have nothing to do with it," and admitting, "I did it." Several days later, appellant turned himself in to the police.

B. *Defense Case*

Appellant testified he could not fully recall the shooting incidence because he had used PCP that day. He drove to Gomez's home because he wanted to get high and had heard Gomez had some drugs. He brought a loaded handgun to show off to Gomez. Appellant paid Gomez $30 for two PCP cigarettes, and he smoked one with Gomez in the kitchen. While smoking the PCP cigarette, appellant repeatedly told Gomez it smelled funny, which made Gomez angry.

Gomez started yelling and kicked the chair out from under appellant. Gomez threatened to kill appellant and Carmen, before pushing and kicking appellant. Appellant retaliated by punching Gomez in the nose. Appellant did not remember shooting Gomez, but when he "came to," Gomez was on the ground. Appellant knew that he "was in trouble," threw the gun in a dumpster, and left town.

Appellant testified Gomez had a reputation as a violent bully. He witnessed Gomez threatening to kill his brother and beating up one of his nieces' boyfriend. Appellant also saw Gomez with a knife and had heard Gomez owned a gun.

Appellant's sister testified Gomez had a reputation for violence. A police officer testified Gomez had kicked out the window out of his patrol car in 2011. Several witnesses testified Gomez had threatened to kill them. Gomez had a 2004 conviction for attempted robbery while armed with a firearm.

C. *Rebuttal Case*

A friend of Gomez who dated appellant for several years testified it was appellant, not Gomez, who had a reputation for violence or aggression. Appellant

4

bragged about having committed violent acts and on one occasion, he pointed a shotgun at her.

In a recorded jail call, appellant told his wife he would go for a claim of self-defense, claiming Gomez had pulled a gun out on him. In another recorded jail call, appellant told his wife to say she did not remember the shooting incident because she was in the bathroom at the time. Appellant stated while Carmen was in the bathroom, he had asked Gomez about a woman he was messing around with, and Gomez got "all riled up." Gomez pulled out a gun and threatened to kill appellant and his wife. Appellant got scared and "jumped on him." At trial, appellant admitted Gomez never had a gun.

D. *Trial and Sentence*

A jury found appellant guilty of first degree murder and found true a gun use enhancement. In a court trial, the court found true a prior conviction and prior prison term allegations. Appellant was sentenced to 84 years to life.

II

DISCUSSION

A. *Instructional Errors*

Appellant contends his murder conviction must be reversed because the trial court erred in giving CALCRIM No. 571, on imperfect self-defense, and CALCRIM No. 370, on motive. We review instructional claims de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Thus, "instructions *not* supported by substantial evidence should not be given" (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1049-1050.) Evidence is "[s]ubstantial" for this purpose if it is "sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

5

1. *Substantial Evidence Supported Giving the Challenged Portion of CALCRIM No. 571*

When the parties discussed CALCRIM No. 571, which provides that a killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed the person in imperfect self-defense or imperfect self-defense of another, defense counsel sought to exclude the portion of CALCRIM No. 571, which states: "Imperfect self-defense does not apply when the defendant, through his own wrongful conduct, has created circumstances that justify his adversary's use of force." The trial court denied the request.

Appellant contends the evidence was insufficient to support giving the challenged portion of CALCRIM No. 571 because the trial evidence did not suggest he committed some wrongful conduct which provoked Gomez's use of force resulting in the shooting. We disagree. Vicky testified appellant pulled out a gun and threatened to kill everyone. Appellant also mentioned a "girl" before Vicky left the room. In a recorded jail call, appellant stated he had asked Gomez about a girl he was messing around with, which caused Gomez to threaten to kill him and his wife. At trial, appellant testified Gomez was a violent bully and that during the incident Gomez threatened to kill appellant and his wife and kicked him. A reasonable jury could find that appellant pulled a gun out on Gomez, which caused Gomez to threaten and kick him, and appellant retaliated by shooting Gomez. The jury could conclude appellant committed a wrongful act that justified Gomez's kick and threat. Thus, substantial evidence supported giving the challenged portion of CALCRIM No. 571.

2. *Appellant's Challenge to CALCRIM No. 370 Is Barred*

The jury was instructed with CALCRIM No. 370 as follows:

"The People are not required to prove that the defendant had a motive to commit the crimes charged or discharge the firearm. In reaching your verdict you may, however, consider whether the defendant had a motive.

6

"Having a motive may be a factor tending to show that the defendant is guilty or that an allegation is true.  Not having a motive may be a factor tending to show the defendant is not guilty or that an allegation is not true."

Appellant contends the motive instruction improperly reduced the prosecution's burden of proof.  However, motive is not an element of the crime of murder.  (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 218.)  In any event, it was defense counsel who requested the instruction, and when the parties discussed the proposed instruction, approved its form.  Thus, appellant is barred from challenging the instruction under the doctrine of invited error.  (See, e.g., *People v. Enraca* (2012) 53 Cal.4th 735, 761 ["The doctrine of invited error bars a defendant from challenging an instruction when the defendant has made a conscious and deliberate tactical choice to request it."].)

B.  *Appellant Is Entitled to a New Sentencing Hearing*

Appellant's sentence included four one-year enhancements for prison priors under Penal Code section 667.5, subdivision (b), and one five-year enhancement for a prior serious felony under section 667, subdivision (a).  Appellant contends he is entitled to the benefits of Senate Bill No. 136, effective January 1, 2020, under which his prison priors no longer qualify as enhancements.  Thus, he argues, the court's true finding of the prison priors and the imposition of the related enhancements under Penal Code section 667.5, subdivision (b), must be vacated.  Appellant also argues the matter must be remanded for the trial court to exercise its newly-granted discretion under Senate Bill No. 1393, effective January 1, 2019, whether to impose the five-year enhancement for the prior felony conviction.  The People agree on both sentencing issues.

We conclude appellant is entitled to the benefits of Senate Bill Nos. 136 and 1393.  The court's true findings on the prison priors and the related enhancements must be stricken.  We will vacate the sentence and remand the case for a new sentencing hearing, at which the court will exercise its discretion its discretion whether to strike the Penal Code section 667, subdivision (a), enhancement.

## III

### DISPOSITION

The conviction is affirmed, the sentence is vacated, and the matter remanded for further proceedings in accordance with this opinion.


ZELON, J.*

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.