Filed 5/16/22  P. v. Campos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079874 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 18CMS-6416) |
| DANIEL VALDEZ CAMPOS, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Kings County, Michael J. Reinhart, Judge.  Affirmed.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Daniel Valdez Campos, Jr. of attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a),[1] count 1), assault with a firearm (§ 245, subd. (a)(2), count 2), possession of a firearm after a felony conviction (§ 29800, subd. (a)(1), count 4), and possession of a dirk or dagger (§ 21310, count 5), and found true a firearm enhancement allegation (§ 12022.53). Campos stipulated that he was convicted of a felony and admitted a serious felony and strike prior conviction. The trial court sentenced Campos to prison for 44 years to life on count 1 and imposed a consecutive term of 4 years for count 5. The court stayed sentences for counts 2 and 4 under section 654 and awarded Campos presentence custody credits. The court also imposed several fines and fees.

Campos raises several challenges to the judgment on appeal. First, he asserts the court abused its discretion and violated his constitutional rights to a fair trial by instructing the jury that his flight from the scene of the shooting, which formed the basis for the charges against him, showed a consciousness of guilt. Specifically, Campos argues that insufficient evidence supported the instruction. In the alternative, Campos argues his attorney's failure to object to the instruction constituted ineffective assistance of counsel. Campos also asserts (1) the court abused its discretion by failing to strike his prior felony conviction; (2) the court imposed an unauthorized sentence with respect to count 1; and (3) his counsel was ineffective for failing to object to the court's imposition of fines and fees without first considering whether Campos had an ability to pay them. As we shall explain, we reject Campos's arguments and affirm the judgment of conviction.

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

On the day of the shooting, the victim lived next to a construction yard in Corcoran, California. Around 1:45 p.m. that day, the victim was riding his bike past the fenced construction yard when he saw Billy Buck, the owner of the yard and the victim's friend. The victim rode inside the yard and stopped to chat with Buck, while remaining seated on his bike. As the victim was talking, he saw Campos riding a bike toward them from the back of the yard.

Campos got off of his bike and approached the men. Campos then got in the victim's face and told the victim to stop cutting holes in the construction yard fence. The victim responded by pushing Campos with his arm and telling Campos he had not cut any holes in the fence. Campos then walked back to his bike and pulled something from a bag tied to the handlebars. Campos told Buck to get out of the way, then pointed a gun at the victim, and pulled the trigger. The weapon made an explosive sound, but no bullet was fired, so the victim thought it was a fake gun. Buck moved away to the other side of the road. The victim then saw Campos fiddling with the gun, then point it at him a second time. Campos pulled the trigger and the gun made an explosive noise, but again no actual shot fired.

Campos then pointed the gun at the victim's face. The victim got off his bike and saw Campos again fiddle with the gun. The victim estimated Campos was about 20 feet from him. The victim then saw Campos point the gun at him and fire for the third time. The victim felt a bullet hit his upper thigh, and heard Campos yell "You think it is fake now? You think it is fake now?" The victim grabbed his bike and walked out of the fenced construction yard. As he walked away, the victim saw Campos riding away from the yard on his bike on Oregon Street, the block next to the yard.

3

The victim then realized his leg was bleeding heavily. He sat on a bench just outside the construction yard. Buck saw the victim bleeding and called an ambulance. Paramedics soon arrived and the victim was taken to the hospital, where he was treated for the gunshot wound. The bullet passed through the victim's upper thigh and exited his body, missing the femoral artery.

The police arrived on the scene just before the victim was taken to the hospital. The victim told the police that Campos, who was known by the police to live in the area, was the shooter. The police immediately searched the construction yard and the surrounding area but did not locate Campos or the gun. Several hours later, an officer patrolling the area where the shooting occurred saw Campos walking with his bike, about a mile from the construction yard. The officer called for backup and Campos was arrested. The arresting officers searched Campos and found a knife with a five-inch blade, a glass smoking pipe, marijuana, and a white substance Campos said was methamphetamine. The gun used in the shooting was never recovered.

The Kings County District Attorney subsequently charged Campos with attempted premeditated murder (§§ 664, 187, subd. (a), count 1), assault with a firearm (§ 245, subd. (a)(2), count 2), possession of methamphetamine and a firearm (Health & Saf. Code, § 11370.1, subd. (a), count 3), possession of a firearm after a felony conviction (§ 29800, subd. (a)(1), count 4), and possession of a dirk or dagger (§ 21310, count 5). The information also alleged Campos suffered both serious felony and strike prior convictions (§§ 667 and 1170.12) and that Campos fired a gun, causing great bodily injury (§ 12022.53).

Campos pleaded not guilty to the charged offenses and denied the enhancement allegations, and the case proceeded to trial. At trial, Campos's

4

defense was that he only fired the gun into the ground, not at the victim.  In support of this theory, Campos's defense counsel emphasized the variations in the victim's statements to police.  Specifically, the victim did not tell the first officer at the scene or the officer who interviewed him at the hospital that Campos pointed the gun at his face, only that Campos fired twice (and not three times) at his legs.

After the conclusion of evidence, the court granted the defense's motion to dismiss count 3 concluding there was insufficient evidence to support the charge.  Before the jury rendered its verdict, Campos admitted the prior strike and serious felony allegations under sections 667 and 1170.12.  Thereafter, the jury returned a guilty verdict on the four remaining counts, and also a true finding on the firearm enhancement.  Before sentencing, Campos moved to dismiss his prior strike conviction under section 1385.  The court denied the motion.

The court sentenced Campos to prison for 44 years to life on count 1, consisting of 7 years to life, doubled to 14 years for the prior strike conviction, plus 25 years to life for the firearm enhancement, plus 5 years for the prior serious felony conviction.  The court also imposed a consecutive term of 4 years for count 5.  The court stayed sentences for counts 2 and 4 under section 654.  Finally, the court awarded Campos presentence custody credits and imposed various fines and fees, consisting of a court security fee of $160 under section 1465.8, a criminal conviction assessment of $120 under Government Code section 70373, and a restitution fine of $300 under section 1202.4.  The court also imposed and stayed a parole revocation restitution fine of $300 under section 1202.45.  Campos timely appealed the judgment of conviction.

DISCUSSION

I

*Instructional Error*

Campos first asserts that reversal is required because the court improperly instructed the jury with a portion of CALCRIM No. 372, the standard flight instruction.[2] The trial court instructed the jury that, "If you conclude the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

Campos maintains that this instruction was not appropriate because there was no evidence showing that he fled after the shooting. At the time the trial court discussed the proposed jury instructions with the attorneys, however, Campos's defense counsel did not object and stipulated that the instruction was appropriate. As an initial matter, therefore, Campos's claim of error is forfeited. (See *People v. Bolin* (1998) 18 Cal.4th 297, 326.)

Even if we assume the argument was not forfeited, the claim also fails on its merits. The trial court must give a flight instruction whenever the prosecution relies on evidence of flight to show a consciousness of guilt. (§ 1127c.) "[A] flight instruction is correctly given 'where there is substantial evidence of flight by the defendant apart from his identification as the perpetrator, from which the jury could reasonably infer a consciousness of guilt.'" (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1245.) "If there is

---

[2]    The full version of the instruction states: "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

6

evidence identifying the person who fled as the defendant, and if such evidence 'is relied upon as tending to show guilt,' then it is proper to instruct on flight." (*People v. Mason* (1991) 52 Cal.3d 909, 943.)  We review the propriety of the giving of a jury instruction de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  Further, we apply the harmless error standard provided in *People v. Watson* (1956) 46 Cal.2d 818, 836 in reviewing an error in giving the flight instruction.  (*People v. Silva* (1988) 45 Cal.3d 604, 628.)

"In general, a flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' [Citations.] ' "[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.]  Flight manifestly does require, however, a purpose to avoid being observed or arrested." ' " (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)  Here, contrary to Campos's assertion, there was sufficient evidence from which the jury could reasonably infer that he fled from the scene and that such action reflected a consciousness of guilt.

After the shooting, the victim witnessed Campos leave the scene on his bicycle and ride away from the construction yard where the crime occurred. Campos then evaded police for several hours and was found almost a mile from the yard.  Further, after fleeing the scene, Campos had the opportunity to dispose of the gun, which was never recovered.  Campos's actions "logically permit[] an inference that his movement was motivated by guilty knowledge." (*People v. Turner* (1990) 50 Cal.3d 668, 694.)  Accordingly, the court did not err by giving the flight instruction.

Further, even if there was an insufficient evidentiary basis to support the instruction, such error was harmless.  The challenged instruction itself merely told the jury that it should "decide the meaning and importance of

7

[Campos's] conduct" and that "evidence that [Campos] fled or tried to flee cannot prove guilt by itself."[3] Thus, even if erroneous, the instruction was harmless because it did "not assume that flight was established, leaving that factual determination and its significance to the jury." (*People v. Visciotti* (1992) 2 Cal.4th 1, 61.) The instruction informed the jury that it first had to decide whether it believed that the defendant actually fled. Only if the jury were to make that preliminary finding would it proceed to decide the significance of that conduct. Further, the instruction benefited Campos to the extent it cautioned that flight, alone, cannot prove guilt.

" 'The cautionary nature of the instructions benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory.' " (*People v. Boyette* (2002) 29 Cal.4th 381, 438.) Given the permissiveness of the instruction and its cautionary nature, which benefits a defendant, Campos could not demonstrate that it is reasonably probable that he would have obtained a more favorable verdict if the trial court had not given the instruction.

Because we conclude there was no error, and that even if the instruction were erroneously given, such error was harmless, we also reject Campos's assertion that his counsel was ineffective for not objecting to the instruction. (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile."].)

---

[3] The court also instructed the jury that some instructions might not apply, and that it should only follow the instructions that did apply.

## II

### *Romero Motion*

Campos next argues the court abused its discretion by denying his request to strike the prior strike felony he admitted before sentencing. As noted, before sentencing, Campos asked the trial court to strike his prior strike, a 1991 conviction for assault with a firearm. Campos argued dismissal of the strike was appropriate because the conviction occurred so long ago and because his overall record in the intervening years was nonviolent.

At the hearing on the motion, the prosecutor opposed striking the prior conviction because Campos had repeatedly reoffended and had been in and out of prison from the time of the prior strike conviction until 2012. The prosecutor asserted Campos had only a five year period from 2013 to 2018 without reoffending, but this did not show Campos was rehabilitated. Further, Campos had not held any job in that time. The court denied the request, first stating it had read and considered Campos's brief and was aware of its discretion under section 1385. The court found Campos had lived a life of crime, noting his criminal conduct had continued from before his 1991 conviction through 2012 and that Campos had a remarkable record of parole violations and return to custody in that timeframe.

Section 1385, subdivision (a), permits a trial court to "strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504.) However, " 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es]

9

that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) "[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so." (*Id*. at p. 378.)

In exercising its discretion, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.)

Under this standard, we cannot conclude the trial court abused its discretion by not striking Campos's prior strike conviction. The record shows the court balanced the relevant facts and considered Campos's background in addition to his criminal record. The trial court's conclusion that Campos had lived a life of crime, including two additional violent offenses, one before and one after the 1991 conviction, as well as repeated parole violations from 1994 to 2012, supported the court's determination that Campos did not fall outside the spirit of the Three Strikes law. (See *Carmony, supra*, 33 Cal.4th at p. 378 ["Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within

10

which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."].)

### III

### *Unauthorized Sentence*

Campos next argues that the sentence imposed by the court on count 1 was unauthorized. He asserts "section 664, subdivision (a) states that a defendant who is convicted of attempted premeditated murder, 'shall be punished by imprisonment in the state prison for life with the possibility of parole,' " and that "[a] person sentenced under this statute becomes eligible for parole only after serving a sentence of 7 calendar years" under section 3046, subdivision (a). According to Campos, the sentence of "14 years to life" is unauthorized and instead should be a life sentence with eligibility for parole after 14 years of imprisonment (consisting of parole eligibility after 7 years, doubled by the prior strike).

In response, the People assert that the sentence was authorized because "[w]hen the punishment of a three strikes defendant is an indeterminate term, 'the Three Strikes law requires a doubling of the 'minimum term' the defendant must serve" and the minimum term for attempted premeditated murder is 7 years imprisonment. Further, the People assert that, because appellant did not object to the term imposed by the trial court, the argument is forfeited.

As pointed out by the Second District Court of Appeal in *People v. Wong* (2018) 27 Cal.App.5th 972 (*Wong*), the base term of a sentence imposed for a violation of section 664, subdivision (a) is commonly referred to "as '7 years to

life.' " (*Id*. at p. 977, fn. 4.) "This is common shorthand to refer to a life sentence with minimum parole eligibility." (*Ibid*.) "For example, the Penal Code specifies 'every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life.' (§ 190, subd. (a).) Thus, a sentence for second degree murder specifies a minimum term of 15 years and is part of the sentence that is pronounced." (*Ibid*.)

Section 664, subdivision (a), uses slightly different terminology, and provides a person found guilty of an attempt to commit a willful, deliberate, and premeditated murder "shall be punished by imprisonment in the state prison for life with the possibility of parole …." (*Wong, supra*, 27 Cal.App.5th at p. 977, fn. 4.) The statute does not specify the minimum term. Instead the minimum parole eligibility for the offense is contained in section 3046, subdivision (a), under which a life prisoner must serve "at least 7 calendar years," or any minimum term specified by any other provision of law, whichever is greater. (*Ibid*.)

The footnote cited by Campos in *Wong* states, "the shorthand pronouncement [of 7 years to life] is incorrect because it indicates a minimum term exists, rather than a minimum parole eligibility." (*Wong, supra*, 27 Cal.App.5th at p. 977, fn. 4.) This is a distinction, however, without a difference. The sentence pronounced here for count 1, as set forth in the form abstract of judgment (prepared by the Judicial Council of California for indeterminate sentencing), is "life with the possibility of parole," with "14 years to life on count 1." The trial court's pronouncement at sentencing stated the same.

Thus, the sentence imposed by the trial court indicates Campos is eligible for parole after 14 years. This is the sentence authorized under

12

sections 664, subdivision (a) and 3046, subdivision (a), doubled in accordance with the Three Strikes law. (See *People v. Jefferson* (1999) 21 Cal.4th 86, 89–90 ["If the current felony is punished by an *indeterminate* term of imprisonment, the Three Strikes law requires a doubling of the 'minimum term' the defendant must serve. (§ 667, subd. (e)(1) ….) For example, a defendant who has a prior strike and who is convicted of a felony punishable by a term of 15 years to life in prison will receive a sentence of 30 years (2 times 15 years) to life."].) Accordingly, we reject Campos's assertion that remand is necessary to correct his sentence.

IV

*Ability to Pay Fines & Fees*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164 (*Dueñas*), in which the court held that imposition of a restitution fine without consideration of a defendant's ability to pay violates the constitutional guarantees of due process and to be free of excessive fines, Campos contends that his trial counsel was ineffective for failing to object to the court's imposition of a $300 restitution fine under section 1202.4, a $120 conviction assessment under Government Code section 70373, and a $160 court security fee under section 1465.8.[4] Campos maintains the record supports an inference he has no future ability to pay the fines, fees and assessments because he was indigent and addicted to drugs before the prosecution of this case.

---

[4] Campos's briefing mentions, but does not challenge, the $300 probation revocation restitution fine that is required under section 1202.44 in his list of fines. This fine was imposed and stayed by the court, and under the statute takes effect only "upon the revocation of probation or of a conditional sentence." (§ 1202.44.)

13

Ineffective assistance of counsel requires a defendant to show that his trial attorney's performance (1) fell below an objective standard of reasonableness under prevailing professional norms, and (2) "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) We agree with the People that any assumed error was harmless beyond a reasonable doubt given future wages Campos may earn in prison, and in light of the relatively small amount of fines, fees, and assessments imposed in this case. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 (*Jones*) [*Dueñas* error subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140 [same]; see *People v. Jenkins* (2019) 40 Cal.App.5th 30, 41, review granted Nov. 26, 2019, S258729, review dismissed and cause remanded July 29, 2020 [court may consider wages defendant may earn in prison on his ability to pay fines and assessments]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 [" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody.' "] (*Aviles*); *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; § 2085.5 [outlining how a restitution fine balance may be collected from prison wages].)

Campos argues the record shows he cannot pay the $580 imposed because at the time of the offense he was indigent and homeless, he never attended high school, and he grew up on the streets. He also asserts he will

14

be unable to pay because he has never been employed and suffers from drug addiction. However, Campos obtained a GED in 2019 and the probation officer reported that Campos, who was 50 years old at the time, was in "good physical health with no mental health issues." The probation officer also specifically found that Campos would be able to obtain employment in state prison.

"[E]very able-bodied" prisoner must work while imprisoned. (§ 2700.) "Wages in California prisons currently range from $12 to $56 a month." (*Jones, supra*, 36 Cal.App.5th at p. 1035, citing in part Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) " 'The state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b) restitution fine.' " (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060; see also *Jones*, at p. 1035, citing § 2085.5, subd. (a) & Cal. Code Regs., tit. 15, § 3097, subd. (f).) While it may take some time for Campos to pay the fines, fees and assessments, that circumstance does not show he will be unable to make payments on these amounts from prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1077; accord, *Lowery,* at pp. 1060–1061 ["While it may take [defendants] considerable time to pay the amounts imposed against them, it is clear they can make payments from either prison wages or monetary gifts from family and friends during their lengthy prison sentences."].)

Contrary to Campos's assertion, the record does not show he is unable to work a prison job in order to earn $580 over the time of his lengthy sentence. "In our view, this forecloses a meritorious inability to pay argument." (*Jones, supra*, 36 Cal.App.5th at p. 1035.) Accordingly, his counsel's failure to object, even if below a reasonable standard of performance, was harmless and reversal on this basis is not warranted.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

DO, J.

16