Filed 1/11/23  P. v. Lee CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CHARLES RICHARD LEE,<br><br>        Defendant and Appellant. | B316402<br><br>(Los Angeles County<br>Super. Ct. No. BA473340) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

        Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo, Acting Supervising Deputy Attorney General, and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury found Charles Richard Lee guilty of assault causing the death of a child and second degree murder as a result of the drowning death of Lee's four-year-old daughter, Zaraellia Thompson. On appeal Lee argues the evidence was insufficient to support the verdicts, the trial court failed to adequately instruct the jury on causation and the case must be remanded for resentencing based on recent amendments to Penal Code section 654.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Lee was charged in an information filed March 3, 2020 with assault on a child causing death (§ 273ab, subd. (a)) and second degree murder (§ 187, subd. (a)).[2]

2. *The Evidence at Trial*

a. *The circumstances surrounding Zaraellia's death*

Lee did not know he had a daughter until May 2018 when Zaraellia's mother, Tisha Thompson, introduced four-year-old Zaraellia to Lee. From May to November 2018 Zaraellia visited Lee at his home on occasion and spent the night at least once. In early November 2018 Thompson left Zaraellia with Lee for an extended visit. Lee lived with his mother, her ex-boyfriend and a tenant. When Zaraellia visited Lee in November 2018, she shared Lee's bedroom.

---

[1] Statutory references are to this code.

[2] The information also contained special allegations pursuant to sections 667 and 1170.12 regarding a prior conviction. The special allegations were dismissed prior to trial at the request of the prosecution.

On the morning of December 2, 2018 Lee called the police emergency number because he found Zaraellia in the bathtub unconscious and not breathing.[3]  Firefighter-paramedic Jesse Pena was the first responder to arrive at the scene.  Pena testified Lee met him at the door and took him to Zaraellia, who was lying on her back on the floor of Lee's bedroom.  She was not breathing and had no pulse.  Pena observed Zaraellia's upper body and hair were wet but the lower half of her body appeared dry.  Pena also noticed Zaraellia had several significant wounds on her body, including on her inner thighs, groin, stomach and face.  Some of those wounds appeared to be third degree burns.

While in the ambulance en route to the hospital, Pena asked Lee when and how Zaraellia had received her injuries.  Lee initially said the wounds were two days old, but then said they were about two weeks old.  Lee told Pena that Zaraellia had gone to the beach with her mother two weeks earlier, and he believed the injuries could have been an infection from the sand or the water.  Lee then said Zaraellia liked to sit next to the space heater and could have burned herself.  Pena also asked Lee what happened to cause Zaraellia to lose consciousness in the bathtub.  Lee said he did not know what happened—Zaraellia was taking a bath, and Lee stepped out of the room briefly.  When he came back, Zaraellia was unresponsive.  Pena testified Lee appeared calm.

Thompson testified Zaraellia was a healthy child.  She could ride a bicycle, recite the alphabet and write her name.  She knew how to swim and bathed herself, although Thompson always stayed in the room with her.  When Thompson left

---

[3]      A recording of Lee's telephone call was played for the jury.

Zaraellia with Lee, Zaraellia had a bite mark from another child and a healing area on her forehead from her accidental use of hair removal cream when visiting Lee in October 2018, but no significant injuries. Thompson spoke to Zaraellia on the telephone the day before the child's death. Thompson testified Zaraellia said she was tired and wanted to go to sleep, but Zaraellia did not indicate anything was wrong.

Lee's mother, Cynthia Brown Lee, testified Zaraellia primarily stayed in Lee's bedroom while visiting in November 2018. In contrast, Lee's then-seven-year-old son frequented other rooms of the house when he visited, including the kitchen and Brown Lee's room. Brown Lee typically saw Zaraellia outside the bedroom once or twice a week. Although Brown Lee did not recall when she last saw the child, on that occasion Zaraellia may have had a puffy eye; but Brown Lee did not notice any other injuries. On the day of Zaraellia's death, Brown Lee heard Zaraellia laughing from the bedroom early in the morning. She did not know anything was wrong until the ambulance arrived later that morning.

Due to his unavailability at trial, the preliminary hearing testimony of Perry Thomas, Brown Lee's tenant, was read to the jury. According to Thomas, when Zaraellia first came to stay with Lee in early November, she played outside with the neighbor's kids and spent time in the common areas of the house. Within a couple of weeks, however, Zaraellia stopped leaving the bedroom. Thomas said he "just didn't see her anymore," but he occasionally heard her or saw her through the bedroom window. At some point Thomas asked Lee why no one ever saw Zaraellia. Lee seemed annoyed and did not respond.

b. *The medical examiner's testimony*

A medical examiner with the Los Angeles County Medical Examiner-Coroner's Office testified, in his opinion, Zaraellia's death was caused by drowning and the manner of death was homicide.[4] He explained Zaraellia had several injuries that had occurred around the time of death: bruising on her right cheek, lacerations on her forehead and right nostril, internal bruising and bleeding on her left scalp muscle, internal bruising on her diaphragm and severe intestinal bruising. He testified the internal bruising to Zaraellia's intestines and diaphragm would have been very painful but would not have affected her ability to breathe.

Zaraellia also had numerous injuries in various stages of healing: circular-pattern injuries on her right cheek, forehead, arms and back; splash-pattern wounds on her cheeks and under her eyes, likely caused by a hot liquid; wounds on both ears; scrapes on her neck, chin, abdomen and chest; wounds on her abdomen consisting of four evenly-spaced lines, approximately 3 to 4 centimeters in length, that may have been burns; similar lined injuries on her chest; a horseshoe-shaped injury on her torso, possibly inflicted by an electrical wire or belt; a cluster of wounds on her left thigh, possibly caused by hot liquid; multiple wounds on her right buttock; wounds on her hands; lacerations in her mouth, likely from blunt force trauma; and scars on her

---

[4]     The two medical examiners who had conducted Zaraellia's autopsy in 2018 no longer worked for the County by the time of trial. In preparation for trial the testifying medical examiner reviewed the autopsy, toxicology and investigator reports, as well as approximately 200 photographs connected to the case.

knees, back and near her right eye.  The medical examiner estimated these injuries were days to weeks old.

Explaining his conclusion Zaraellia's death was a homicide, the medical examiner stated it was unexpected for an otherwise healthy four-year-old to drown in a bathtub—typically a child of that age would be capable of standing up to escape from danger. In addition, the new injuries (and the absence of any explanation for them) indicated a struggle had taken place at the time of the drowning.  The medical examiner also explained wounds at various stages of healing are consistent with ongoing child abuse, a factor supporting the determination that child abuse played a role in Zaraellia's death.  Collectively, he opined, the circumstances here were highly suspicious and consistent with a homicide.

c.  *Lee's recorded interviews*

The day of Zaraellia's death, Lee was questioned by police officers in three separate interviews.  Recordings of the interviews were played for the jury.

The first interview occurred at the hospital shortly after Zaraellia's death.  Lee said he left Zaraellia alone in the bathtub for less than a minute while he went to get her a towel.  When he came back, she was unconscious.

The second interview, recorded on video, took place at Lee's house on the evening of the drowning, during which Lee described the events of that morning and showed the police officers where they took place.  Lee stated he walked Zaraellia to the bathroom and put her in the bathtub, a walk-in tub with a door that opened and a bench inside.  Lee said the water was about seat level in the bathtub.  Zaraellia was sitting up, and her head was above the water.  Lee left to get a towel from his

bedroom.  When he returned less than a minute later, Zaraellia was on her knees with her head lying on her hands on the bathtub seat, the way someone would lay their head on a desk. The water level was still at her chest.  Lee thought Zaraellia was asleep, but she would not respond to him.  He picked her up, lay her on the bathroom floor and tried to resuscitate her.  When he was unsuccessful, he carried Zaraellia to his bedroom and put her on the floor.

When asked about the burn marks on Zaraellia's body, Lee again suggested they had come from the heater.  He said he had applied ointment every day to Zaraellia's legs in the places with open wounds.  He claimed he had not noticed certain injuries were in repetitive circular and linear patterns.  Lee believed scratches on Zaraellia's arms had come from the dog they had acquired two days earlier.  Lee stated he had not seen any injuries to Zaraellia's stomach or face the morning of her death, but he had noticed bruises on her face two days earlier.  Zaraellia told him they were from falling off the bed.  Zaraellia had complained of pain to her ears after going to the beach two weeks before her death.  Lee put ice and ointment on the wounds.  Lee confirmed Zaraellia did not have any injuries when she first came to stay with him in early November.

The third interview was conducted at the police station on the night of Zaraellia's death.[5]  Lee told police officers, when Zaraellia came to visit him prior to November 2018, she occasionally played outside with kids in the neighborhood. However, after she got sunburned at the beach in early

---

[5]      At the beginning of this interview police officers informed Lee of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436.

November, Lee no longer let her go outside because he thought the sun would aggravate the sunburn. When asked whether he was aware of the injuries on Zaraellia's body, Lee replied he knew she had scratches on her groin because she had complained it hurt to urinate. Once he saw the scratches, he applied ointment to them.

Lee told police Zaraellia had been having problems the past few weeks controlling urination and bowel movements. When she urinated or defecated in the bed, Lee would get angry and yell at her. At least once he hit her on the hand or with a belt. Lee stated Zaraellia defecated in the bathtub the day of the drowning.

Lee insisted he did not know how Zaraellia received most of her injuries. He speculated the burns were from the heater. He also said there had been a period when the heater in his bedroom had not worked, and he used a hair dryer to keep warm. He would hold the hair dryer under the blankets in the bed to warm himself and Zaraellia. He believed the hair dryer could have caused the burns on the child's legs. Later in the interview Lee said Zaraellia had complained a week earlier that the bath water was too hot and suggested that could have been how she got the injuries on her groin and legs.

Lee gave a different account of the drowning during this interview. He said he had left Zaraellia alone in the bathtub for a minute or two to smoke a cigarette. He also said the water was up to her neck rather than her chest. He repeatedly denied drowning Zaraellia.

3. *The Verdict and Sentence*

The jury found Lee guilty of assault causing the death of a child and second degree murder. The trial court sentenced Lee to

an indeterminate state prison term of 25 years to life for assault causing the death of a child. The court imposed and stayed pursuant to section 654 a sentence of 15 years to life for second degree murder.

## DISCUSSION

### 1. *Substantial Evidence Supports the Convictions*

#### a. *Standard of review*

In considering a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357;

accord, *People v. Dalton* (2019) 7 Cal.5th 166, 243-244; *People v. Penunuri* (2018) 5 Cal.5th 126, 142.) "'Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.'" (*People v. Clark* (2016) 63 Cal.4th 522, 626.)

        b. *Substantial evidence supports the conviction for assault resulting in the death of a child*

"Assault on a child resulting in death requires a showing that (1) the defendant had care or custody of a child under eight years old, (2) the defendant did an act that by its nature would directly and probably result in the application of force to the child, (3) the defendant did that act willfully, (4) the force used was likely to produce great bodily injury, (5) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in great bodily injury to the child, (6) when the defendant acted, he had the present ability to apply force likely to produce great bodily injury to the child, and (7) the defendant's act caused the child's death." (*People v. Sanchez* (2020) 49 Cal.App.5th 961, 978; see § 273ab, subd. (a).)[6]

The prosecution's theory at trial was that Lee intentionally held Zaraellia under the water, resulting in her death. As the prosecutor told the jury during closing argument, "He is either

---

[6] Section 273ab, subdivision (a), states: "Any person, having the care or custody of a child who is under eight years of age, who assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in the state prison for 25 years to life."

intentionally holding her under the water to kill her, or he's intentionally holding her under the water to punish her because he is upset with her."[7]  The defense's theory was that Zaraellia hit her head on the seat of the bathtub while Lee was out of the room, lost consciousness and drowned.  Defense counsel argued the death was "a tragic accident by a neglectful person."

On appeal Lee contends there was not substantial evidence to support the prosecution's theory that Lee caused Zaraellia's death because the injuries inflicted around the time of death "appear attributable to the child's fall from her position on the walk-in tub's seat when appellant was absent from the room." (Italics omitted).  Despite this conclusory assertion, there was no expert testimony a spontaneous fall in the bathtub could have caused Zaraellia's most recent injuries.  On the other hand, the medical examiner testified the injuries to Zaraellia's intestines and diaphragm could have been caused by someone holding her stomach-side-down against the seat or wall of the bathtub.  The weight to be given to the medical examiner's testimony and the inferences to be drawn from Zaraellia's injuries were questions for the jury.

Reviewing the record in the light most favorable to the prosecution, ample evidence supports a finding Lee held Zaraellia

---

[7]     Notably the prosecution did not argue the injuries caused by ongoing child abuse were the proximate cause of Zaraellia's drowning, nor could it have, given the absence of testimony of a prior injury severe enough to cause cognitive or physical impairment that might lead to drowning.  Defense counsel underscored this point to the jury in closing argument, stating, "In this case, the assault is the drowning, not the previous assault."

under the water until she drowned.  In addition to the medical examiner's expert testimony that Zaraellia's contemporaneous injuries were consistent with being held against the bathtub, he also opined that such injuries are typically not seen in accidental drowning cases and most drowning victims are found floating face down in the water rather than resting their heads out of the water.  There was also testimony from the responding paramedic that Zaraellia was wet only from the waist up.  In addition, the jurors listened to and/or watched recordings of Lee's statements on the day of Zaraellia's death, from which they could assess his demeanor and credibility.  Based on this evidence, a reasonable trier of fact could find Lee intentionally drowned Zaraellia.

  c. *Substantial evidence supports the conviction for second degree murder*

Murder is the unlawful killing of a human being "with malice aforethought."  (§ 187, subd. (a).)  "Malice may be either express or implied.  [Citation.]  Express malice is an intent to kill. . . .  Malice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses."  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.)  "A killing with express malice formed willfully, deliberately, and with premeditation constitutes first degree murder.  [Citation.]  'Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.'"  (*People v. Beltran* (2013) 56 Cal.4th 935, 942.)

Lee argues there was no evidence of malice on his part because Zaraellia's death was caused by his negligence in leaving

her unattended in the bathtub, rather than by actions taken with an intent to kill or a conscious disregard for the danger to human life. As discussed, the jury's rejection of Lee's negligence theory at trial and its determination Lee acted with either express or implied malice were amply supported by the evidence.

2. *The Trial Court Did Not Commit Instructional Error*

a. *Governing law and standard of review*

A trial court in a criminal case has a duty to instruct on general principles of law applicable to the case (*People v. Young* (2005) 34 Cal.4th 1149, 1200), that is, "'"those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'" (*People v. Valdez* (2004) 32 Cal.4th 73, 115.)

We review defendant's claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "In assessing a claim of instructional error, 'we must view a challenged portion "in the context of the instructions as a whole and the trial record" to determine "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."'" (*People v. Jablonski* (2006) 37 Cal.4th 774, 831.)

b. *The trial court properly instructed on assault causing the death of a child*

With respect to the charge of assault causing the death of a child, the trial court instructed with CALJIC No. 9.36.5, which states a person who assaults a child "resulting in the child's death" is guilty of a violation of section 273ab, subdivision (a).[8]

---

[8] As given, CALJIC No. 9.36.5 stated, "Defendant is accused in Count 1 of having violated section 273ab, subdivision (a), of the Penal Code, a crime. [¶] Every person who, having the care or

13

Lee contends the trial court erred by failing to additionally instruct the jury sua sponte on the issue of proximate cause. Specifically, Lee argues the court should have instructed with language similar to CALCRIM No. 820 (the CALCRIM instruction regarding section 273ab, subdivision (a)) which, in addition to listing the elements of the offense, states, "An act causes death if: [¶] 1. The death was the natural and probable consequence of the act; [¶] 2. The act was a direct and substantial factor in causing the death; [¶] AND [¶] 3. The death would not have happened without the act. [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. [¶] A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that caused the death."[9]

---

custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, is guilty of a violation of Penal Code section 273ab, subdivision (a), a crime. [¶] 'Great bodily injury' means significant or substantial bodily injury or damage; it does not mean trivial or insignificant injury or moderate harm. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person had the care or custody of a child under eight years of age; [¶] 2. That person committed an assault upon the child; [¶] 3. The assault was committed by means of force that to a reasonable person would be likely to produce great bodily injury; and [¶] 4. The assault resulted in the death of the child."

[9] We certainly agree with Lee's suggestion it would be far better practice for superior court judges trying criminal cases to use CALCRIM pattern instructions (see Cal. Rules of Court,

Even if not forfeited because not raised in the trial court,[10] Lee's argument is without merit. As Lee acknowledges, the trial court need only instruct on causation when it is at issue in the case. (*People v. Brasure* (2008) 42 Cal.4th 1037, 1056-1057.) Lee's conclusory assertion that "causation was 'the' disputed issue with respect to the 273ab charge" and "was the basis for defense counsel's motion for a judgment of acquittal at the close of evidence" misapprehends the record and the relevant legal theory of causation.

To be sure, defense counsel did move for acquittal based on the lack of evidence that the injuries inflicted prior to the day of the drowning caused Zaraellia's death. However, the court responded that its understanding of the prosecution's theory was the assault that caused Zaraellia's death was the act of holding her under water, not any earlier assaults. The prosecutor agreed. Further, as discussed, both the prosecutor and defense counsel made clear in their closing arguments that the relevant act alleged to have caused Zaraellia's death was not the ongoing child abuse but the forcible drowning. Accordingly, whether the injuries Zaraellia sustained from the ongoing child abuse were the proximate cause of her death was not at issue in the trial.

---

rule 2.1050(e) ["[u]se of the Judicial Council instructions is strongly encouraged"]). But it is not error to persist in using CALJIC instructions where they adequately cover pertinent legal principles. (See *People v. Cornejo* (2016) 3 Cal.App.5th 36, 60.)

[10] "'A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'" (*People v. Grimes* (2016) 1 Cal.5th 698, 724; accord, *People v. Guiuan* (1998) 18 Cal.4th 558, 570.)

There was only one issue the jury needed to consider in determining Lee's criminal liability: Did he forcibly hold Zaraellia under the water. That is, this was not a case where a defendant committed an act, and the jury was tasked with determining whether that act was the proximate cause of death. (See, e.g., *People v. Bland* (2002) 28 Cal.4th 313, 335-338 [instruction on proximate cause necessary where jury must determine whether shots fired by defendant hit the victims and, even if they did not, whether defendant may have proximately caused the harm].) Nor was this a case where Lee's actions set in motion a chain of events that led to Zaraellia's death in an unusual but nonetheless foreseeable manner. (See, e.g., *People v. Crew* (2003) 31 Cal.4th 822, 847 ["[t]o relieve a defendant of criminal liability, an intervening cause must be an unforeseeable and extraordinary occurrence"].) The question for the jury was simply whether Zaraellia's death was the direct result of Lee's holding her under the water. Once the jury determined Lee held Zaraellia under the water, there was no question it resulted in the child's death. Consequently, there was no legitimate issue of proximate cause for which a causation instruction was necessary.[11]

---

[11] Because we conclude the failure to give an instruction on causation was not error, we need not address Lee's argument defense counsel was ineffective for failing to request such an instruction. (See *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["[c]ounsel is not ineffective for failing to make frivolous or futile motions"]; *People v. Cudjo* (1993) 6 Cal.4th 585, 616 [counsel's failure to object cannot constitute ineffective assistance when there was no sound legal basis for an objection].)

### 3. *Remand Is Not Appropriate for the Trial Court To Exercise Its Discretion Under Section 654*

When Lee was sentenced on November 9, 2021, section 654, subdivision (a), provided, in part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment." One month earlier, on October 1, 2021, the Governor signed Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1), which amended section 654, effective January 1, 2022, to remove the requirement that the court impose the longest potential term of imprisonment. Section 654, subdivision (a), now states, in part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions."

The trial court complied with the then-current version of section 654, subdivision (a), sentencing Lee to the longer potential term of imprisonment: 25 years to life for assault causing the death of a child, rather than the shorter available sentence of 15 years to life for murder. The court expressly acknowledged the soon-to-be-effective change in the law, stating, "[O]ne count must be stayed under 654. As the law currently exists, I must sentence on the crime that carries the longer sentence. . . . I do understand that as of January 1, 2022, the court will have this discretion as to which count to impose and which count to stay. I shall state now that had I had the discretion today, I would still sentence on the heavier count, because that is what this crime is worth."

Lee contends remand for resentencing is required for the trial court to exercise its newly enacted discretion to impose the

shorter applicable sentence.  While Lee concedes the trial court expressed its awareness of the upcoming changes to the law and stated it would still impose the longer sentence if it had discretion not to do so, Lee argues the court's "bare bones comment was inadequate for purposes of providing a meaningful record for appellate review; it constituted an abuse of its newly created discretionary sentencing authority."

Lee's contention lacks merit.  The trial court stated it understood its discretion under amended section 654 and explained, albeit succinctly, the longer sentence was warranted by the severity of the crime.  Nothing more was required. Remand is not appropriate.

## DISCUSSION

The judgment is affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.